SOUTHERN PAC. CO. et al. v. ARLINGTON HEIGHTS FRUIT CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1911.)

No. 1,804.

1. COURTS (§ 276*)—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT—WAIVER OF OBJECTION.

Where the subject-matter of an action is within the jurisdiction of a federal court, the right of a defendant to be sued only in the district of his residence when given by statute is a personal privilege which he may waive, and does waive by a general appearance; but it is not so waived where he makes a special appearance for the express purpose of challenging the jurisdiction over his person on that ground, although he may have combined with his motion or plea to the jurisdiction matter going to the subject of the suit, as that it is not within the jurisdiction of the court as a court of equity to determine the cause as presented by the bill.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*

Waiver of right as to district in which suit may be brought, see notes to Memphis Savings Bank v. Houchens, 52 C. C. A. 192; McPhee & McGinnity Co. v. Union Pac. R. Co., 87 C. C. A. 684.]

2. COURTS (§ 289*)—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT.

A suit in a Circuit Court to enjoin the enforcement of an interstate rate made by railroad companies alleged to be unlawful as in violation of Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), and also of Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), pending the determination of its reasonableness by the Interstate Commerce Commission, is not one in which the jurisdiction of the court is founded only on diversity of citizenship, but involves questions arising under the laws of the United States, and, where the objection is raised, can only be maintained against a defendant in the state of which it is an inhabitant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

Hanford, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern Division of the Southern District of California.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by the Arlington Heights Fruit Company and others against the Southern Pacific Company and others. From an order granting a temporary injunction (175 Fed. 141), defendants appeal. Reversed.

This is a suit instituted November 9, 1909, for injunctive relief, temporary in character, until the Interstate Commerce Commission shall have determined whether in point of fact a freight rate which the appellants propose to establish for the transportation of lemons from the Southern district of California to markets in the Middle West and elsewhere is unjust and unreasonable. The appellees were complainants below. After a hearing upon affidavits presented by the respective parties, a temporary injunction was granted. This appeal is from the decree thus rendered. Prior to this hearing certain preliminary questions pertaining to the jurisdiction of the court and to the insufficiency of the cause of suit were disposed of. To understand fully the nature of such questions, a more extended statement of the cause of suit must be made. The Arlington Heights Fruit Company and numerous other corporations and individuals bring this suit in behalf of themselves and all others similarly situated against the Southern Pacific Company, the Atcheson, Topeka & Santa Fé Railway Company, the San Pedro, Los Angeles & Salt Lake Railroad Company, and the Transcontinental Freight Bureau, which latter association, it is alleged, is an unincorporated concern, and is composed of the three above-named railway companies and a number of other corporations engaged in like transportation business. The complainants are all citizens and residents of the state of California. All the defendants are citizens and residents of states other than the state of California, namely, the Southern Pacific Company of the state of Kentucky, the Santa Fé Railway Company of the state of Kansas, and the San Pedro Railroad Company of the state of Utah, but each of said railway companies has an office within and is doing business in the state of California, and is operating lines of railroad for the transportation of passengers and freight from within the state, and especially from within the Southern district of California, into and through other states and territories, and is subject to the provision of the act of Congress entitled "An act to regulate commerce," approved February 4, 1887, and all acts amendatory thereof and supplementary thereto. There is no allegation as to the residence and citizenship of the defendant Transcontinental Freight Bureau, but it is averred that it controls the fixing of freight rates upon lines from all California points into other states and territories, and that said defendant railway companies are the principal members of said bureau and control and direct the policy and operations of said bureau; that said defendant railway companies, through contracts and traffic arrangements with other connecting carriers, have established through routes and joint rates for the carriage of lemons from California points to all points in the United States and Canada; that the defendant railway companies issue to complainants bills of lading for through shipment into other states and territories, and complainants have no dealings whatever with such connecting carriers, all of which connecting carriers are corporations of states other than California, and have no lines of railway therein; that the complainants are engaged in the business of growing, buying, selling, and packing lemons, and of shipping the same from Southern California points over the lines of the defendant railway companies to various cities and towns throughout the United States, and have made large investments in their business, and that the defendant railway companies have an entire monopoly upon the transportation of lemons from points in California to the markets where the same are sold in large quantities; that prior to February 11, 1905, the Consolidated Forwarding Company, the Southern California Fruit Exchange, and other growers and shippers of lemons filed complaints against the defendant railway companies, other than the San Pedro Railroad Company, before the Interstate Commerce Commission, charging that the then existing rates for transporting citrus fruits, including lemons, from points within the state to points without, which was $1.25 per hundred pounds, was unreasonable and unjust, whereby it was

sought to have the rates reduced on lemons in car load lots to $1. per 100 pounds; that the Interstate Commerce Commission promulgated its order on the 11th day of February, 1905, declaring $1.10 per 100 pounds in car load lots to be just and reasonable, but that prior to such promulgation the defendant railway companies, other than the San Pedro Railroad Company, voluntarily reduced the said rates from $1.25 to $1 per hundred pounds, car load lots, which rate has ever since been the duly filed, published, and legal rate upon lemons transported as aforesaid. The findings of the Interstate Commerce Commission were accompanied by various statistical matters showing the growth and development of the lemon industry and the shipping facilities attending it. Speaking generally, it is further alleged that the lemon industry has vastly increased in later years, which has been encouraged by the defendant railway companies through the fixing and maintenance of the said rate of $1 per 100 pounds, but that even then the California growers have been unable to compete with the importations of foreign growers and shippers on the Atlantic seaboard, and during a number of months in the year have been unable to compete with such importations in the Middle Western states east of the Missouri river; that, to remedy this condition and to permit the lemon industry of California to exist and to enlarge the markets therefor, Congress on August 5, 1909, enacted that the various duties on foreign lemons be increased from 1 to 1½ cents per pound: that such increase was essential to enable the California growers to dispose of their entire crop, and to prevent foreign growers from occupying the market, and thus occasioning complainants serious loss and damage; that immediately upon the enactment of said tariff the defendant railway companies announced an increase of 15 cents per 100 pounds on lemons to certain points in the United States and Canada, to become effective December 6, 1909, which tariffs have been filed with the Interstate Commerce Commission, and that the result of said increase will be to destroy the parity and equality between the marketing of foreign and California lemons within the United States during a great portion of the year. In short, it is alleged, with appropriate detail of facts, that, if such increase of rate is maintained, it will result in the destruction in a large measure of the lemon industry in California, and cause the complainants irreparable injury, that the previous rate under all the conditions existing is reasonable and just, and that, upon the other hand, the increase is arbitrary, unreasonable, and unjust, and will leave to the complainants no substantial remuneration for their products, all of which is in violation of the interstate commerce act of February 4, 1887, and the amendments thereof, and also of the Sherman anti-trust act, approved July 2, 1890, and will deprive complainants of their property without due process of law, contrary to the federal Constitution. It is further alleged that the defendants have conspired to discriminate against the complainants and their business, and thereby to monopolize interstate commerce as it pertains to the transportation of lemons in certain sections of the country; that complainants have filed their complaints before the Interstate Commerce Commission respecting such illegal and excessive charges, where the matter is now pending; and that, unless restrained, the defendant railway companies will put such illegal and unjust rates into effect on and after December 6, 1909. The prayer is for an order to show cause why a temporary injunction should not issue restraining defendants from putting such unlawful rate into effect until the final disposition of the matter by the Interstate Commerce Commission. The order was duly issued requiring the defendants to show cause on November 22, 1909. On that day the several defendant railway companies appeared specially, each by a plea setting forth, in effect, first, that it is a corporation organized and incorporated in a state other than the state of California, and is not a citizen or inhabitant of the state of California, that it appears upon the face of the bill that this is a civil suit, wherein the jurisdiction of the court is not founded only on the fact that it is between citizens of different states, but is also based upon acts of Congress relating to interstate commerce showing cause of suit thereunder; second, that the court has no jurisdiction to determine whether the published rates are reasonable or unreasonable prior to a determination of that question by the Interstate Commerce Commission; and, third, that the

rates complained of are joint through rates established by contract between the defendant railway companies and their connecting carriers, that such connecting carriers are indispensable parties to the suit, and that without them the court is powerless to make any order or decree affecting such contract or the rights of any of the parties thereto not joined in the suit. The language introducing the plea of the Santa Fé Railway Company is as follows: "Specially appearing under protest for the purpose of this plea to the jurisdiction of the court under the bill for injunction filed in the above-entitled suit, and for no other, says." The language of each of the other two railway defendants is: "Enters this court in limine solely for the purpose of showing that said court has not, and should not take or have, jurisdiction over it for the purpse of issuing such injunction, and, by way of special plea in this behalf, says." On the same day two of the railway companies filed a demurrer to the bill, basing it upon several grounds, among which are that the court has no jurisdiction of the subject-matter; that the court has no jurisdiction to determine as to the reasonableness or unreasonableness of the proposed rate; that the defendants cannot be sued within the jurisdiction of this court; that the complainants are not entitled to the relief prayed because of the absence of indispensable parties; and that the bill does not state a cause of relief. The defendant Santa Fé Railway Company answered, and various affidavits were filed by parties showing cause for and against the issuance of an injunction. Thereupon a hearing was had upon the plea to the jurisdiction of the court, and later upon the demurrer, and both the plea and demurrer were overruled. Eventually a hearing was had upon the merits and a temporary injunction granted.

J. W. McKinley, C. W. Durbrow, W. F. Herrin, W. R. Kelly, A. S. Halsted, Robert Dunlap, T. J. Norton, E. W. Camp, U. T. Clotfelter, and Gardiner Lathrop, for appellants.

Joseph H. Call, Asa F. Call, and Thomas B. Dozier, for appellees.

Before GILBERT, Circuit Judge, and HANFORD and WOLVERTON, District Judges.

WOLVERTON, District Judge (after stating the facts as above). The appellants make three contentions: First. That the Circuit Court was without jurisdiction of the parties defendant, because the suit was not instituted in the districts, respectively, of which they were citizens and inhabitants. This proceeds upon the ground that the suit was not one founded upon diversity of citizenship only, but upon the further ground, as well, that a federal question is involved. Second. That the court was without power to determine as to the reasonableness or unreasonableness of a rate in advance of a determination of that question by the Interstate Commerce Commission. Third. That the injunctive relief sought cannot be granted because of the absence of indispensable parties. The appellees insist that appellants have waived their first contention by a general appearance or what is thought to be tantamount thereto by combining with their plea to the jurisdiction of the court a plea to the merits of the controversy. Logically this question should be first determined.

[1] By Act March 3, 1887, c. 373, 24 Stat. 552, as corrected by Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), it is provided that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds an amount stated, and arising under the

Constitution or laws of the United States, or in which there shall be a controversy between citizens of different states. It is further enacted that no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court; and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but, where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant. 1 Supplement to Revised Statutes of the United States, pp. 611, 612. Thus it appears that, when a federal question is involved, the defendant must be sued in the district of which he is a resident and inhabitant, but, when the suit is based on diversity of citizenship only, he may be sued as well in the district where the plaintiff is an inhabitant.

It is insisted here that a federal question is involved, which may be conceded for the present, and the proper venue for laying the suit was in the respective districts of the defendant railway companies. The place where a defendant may be sued, however, is a privilege personal to him, and in any case where the court has jurisdiction over the subject-matter he may by submitting himself to the territorial jurisdiction of the court waive that privilege. Thereupon the court, having acquired jurisdiction of the person, may pass judgment respecting the subject-matter. So that, whether the defendants were sued in the district where plaintiffs reside or in some district other than that of their respective citizenship, they might, by surrendering to the territorial jurisdiction of the court, waive their personal privilege of being sued in their own particular district. In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904.

The question now is, Have the defendants, the railway companies, by their appearance in the cause, considering the manner of such appearance, waived that personal privilege? This entails a review of some of the leading cases upon the subject. We should keep in mind as we proceed the especial contention of the complainants, which is that the defendants have waived this privilege by combining a plea to the merits of the controversy with a plea to the jurisdiction of the court.

The first case called to our notice is Fitzgerald Cons. Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36. 34 L. Ed. 608. This was an action instituted in the district of Nebraska against a corporation of Iowa. After the defendant had filed a demurrer to the complaint, an answer, and an amended answer, challenging the legal sufficiency of the complaint as well as the merits of the cause of action, and while the cause was on trial before a jury, it interposed a plea to the jurisdiction of the court, which plea was overruled. Answering an assignment of error upon this ruling, the Supreme Court says:

"These proceedings were taken by defendant after discovering the alleged ground of objection to the service, and there was no action on its part confined solely to the purpose of questioning the jurisdiction over the person. That such jurisdiction resulted under the circumstances admits of no doubt."

Here was a general appearance and a plea to the merits before the jurisdiction of the court over the person was challenged. Hence he was held to have waived his right to insist upon the latter question.

The next case is that of St. Louis, etc., Ry. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659. The record in this case contains no process of service. The first paper filed upon the part of the defendant was a demurrer to the complaint, based upon the following grounds: That the court was without jurisdiction of the person of the defendant, that it was without jurisdiction of the subject-matter of the action, and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer being overruled, a trial was had, resulting in judgment for the plaintiffs. Speaking of this procedure as it pertains to the jurisdiction respecting the person of the defendant, the court said:

"Its first appearance was, not to raise the question of jurisdiction alone, but also that of the merits of the case. Its demurrer, as appears, was based on three grounds, two referring to the question of jurisdiction, and the third, that the complaint did not state facts sufficient to constitute a cause of action. There was therefore in the first instance a general appearance to the merits. If the case was one of which the court could take jurisdiction, such an appearance waives, not only all defects in the service, but all special privileges of the defendant in respect to the particular court in which the action is brought."

Another case is that of Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401. That was an action upon a bond. The defendant company entered a general appearance, but afterwards pleaded in abatement that two others of the defendants were not citizens in the state and district wherein the action was instituted, and it was held by the court that such general appearance waived the right afterwards to object to the jurisdiction of the court over the person; the court saying:

"But the provision as to the particular district in which the action shall be brought does not touch the general jurisdiction of the court over such a cause between such parties; but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon, or may waive, at his election, and the defendant's right to object that an action within the general jurisdiction of the court is brought in the wrong district is waived by entering a general appearance, without taking the objection."

The most recent case announcing the particular principle is that of Western Loan & Savings Co. v. Butte & Boston Consolidated Mining Company, 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101. The action was there instituted neither in the district of the plaintiff nor of the defendant, but the defendant first appeared by filing its demurrer to the complaint, alleging, first, that the court had no jurisdiction of the subject of the action; second, that the court had no jurisdiction of the person of the defendant; third, that the complaint did not state facts sufficient to constitute a cause of action; fourth, that the complaint was uncertain; and, fifth, that the complaint was unintelligible. The court, however, held that where a diversity of citizenship exists, so that the suit is cognizable in some Circuit Court, the objection to the jurisdiction of the particular court in which the suit is instituted

may be waived by appearing and pleading to the merits. In considering whether the defendant had submitted to the jurisdiction of the court, the court said:

"It (defendant) invoked and obtained a ruling on the merits so far as the legal sufficiency of the cause of action is concerned."

Hence that the defendant had waived its personal privilege of being sued in its own district.

In Mahr v. Union Pacific Railway Co. (C. C.) 140 Fed. 921, it was held, in effect, that where the defendant, in a motion to quash the service of summons, assigned as reasons for the motion matters going to the subject of the action, it amounted to a general appearance, notwithstanding the use of appropriate words which usually attend an appearance intended to be limited and special.

So it was held, also, in Peale v. Marian Coal Co. (C. C.) 172 Fed. 639, that the defendants waived their right to be sued in a particular district by setting up as one of the grounds of demurrer to the bill of complaint that the plaintiff was not entitled to the relief prayed for "This," says the court, "called for a judgment on the merits, which the court could not undertake to render, except as it first assumed jurisdiction of the controversy. * * * If sustained, it amounted to a decision that the plaintiff had no case on his own showing, and the defendants could not call on the court for this, and in the same breath insist that the bill should be dismissed because the parties were not rightly before it."

On the other hand, there are many cases which hold to the principle that, where a special appearance has been entered for the purpose of raising the jurisdictional question only, it does not operate to waive the right to insist upon being sued in the district of the citizenship of the defendant. In the case of Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237, the defendant appeared specially by counsel appointed for the purpose of moving the court to dismiss the action on the ground that the service of the summons was made upon him in a place other than in the bailiwick of the sheriff making the service. The court in deciding the case says:

"The right of the defendant to insist upon the objection to the illegality of the service was not waived by the special appearance of counsel for him to move the dismissal of the action on that ground, or what we consider as intended, that the service be set aside, nor, when that motion was overruled, by their answering for him to the merits of the action. Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

Another case in the same line is Southern Pacific Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942. The defendant there, by leave of court, filed "an answer or demurrer" "for the special purpose and no other," using his language, "until the question herein

raised is decided, of objecting to the jurisdiction of this court," but reserved the right in case the court overruled the demurrer to be allowed to answer to the merits. The court overruled the demurrer, and the defendant subsequently answered, and it was insisted that by this procedure the defendant waived the jurisdiction of the court over its person. The court, after deciding that there was no such waiver by the proceedings, continued:

"The want of jurisdiction, being apparent on the face of the petition, might be taken advantage of by demurrer, and no plea in abatement was necessary. Coal Co. v. Blatchford, 11 Wall. 172 [20 L. Ed. 179]. The defendant did file a demurrer for the special and single purpose of objecting to the jurisdiction; and it was only after that demurrer had been overruled, and the defendant had excepted to the overruling thereof, that an answer to the merits was filed. Neither the special appearance for the purpose of objecting to the jurisdiction, nor the answer to the merits after that objection had been overruled, was a waiver of the objection."

The court then cites the case of Harkness v. Hyde in support of the principle.

Another case is Mexican Central Railway v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699. In this case the defendant appeared specially for the purpose of excepting to the service of the citation, and the court, after reviewing the authorities, reaffirmed the doctrine of the foregoing cases.

The latest case upon the subject, and one which upon the facts is of very close analogy to the one at bar, is Davidson Marble Co. v. Gibson, 213 U. S. 10, 29 Sup. Ct. 324, 53 L. Ed. 675. That was on writ of error to the Circuit Court for the Northern District of California. A demurrer and a motion to quash and dismiss were filed at the same time. The demurrer assigned grounds therefor, among others, first, that the court had no jurisdiction of the defendants or either of them; second, that the plaintiff was not a resident or citizen of the Northern District of California; third, that the defendants were not, nor was either of them, a resident or citizen of the Northern District of California; fourth, that the plaintiff was a citizen and resident of the state of Pennsylvania, and the defendants, and each of them, were citizens and residents of the state of Illinois; fifth, that the court had no jurisdiction of the subject of the action; and, sixth, that the court had no jurisdiction of the controversy alleged in the complaint. The motion to quash the service and dismiss the action is as follows:

"The defendants above named and each of them hereby appear specially in the above-entitled cause for the purpose only of moving the said court to quash and set aside the service of the summons in the said cause, and to dismiss the said action, upon the ground that the said court has no jurisdiction of the persons of the defendants, and upon the further ground that the said court has no jurisdiction of the person of the plaintiff; and upon the further ground that neither the plaintiff nor the defendants, or any or either of them, are citizens of the state of California or residents of the Northern District of California in the Ninth judicial circuit, and upon the further ground that the said court has no jurisdiction of the controversy at issue. The said motion will be based upon the complaint of the plaintiff and all subsequent proceedings and the return of service of summons herein."

The motion to quash was denied, and the demurrer overruled. The defendants declining to plead further, a judgment was entered against

them, from which the writ of error was prosecuted. After indicating that the case was governed by that part of act March 3, 1887, as corrected by Act Aug. 13, 1888 (25 Stat. 433, c. 866), which provides that no civil suit shall be brought before any of the Circuit Courts of the United States against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, Mr. Justice Moody says:

"It follows, therefore, that the court below was without jurisdiction of this cause, and, as the defendants have taken no action whatever in response to the summons. except to appear specially and object to the jurisdiction, it cannot possibly be said that the objection to the jurisdiction has been waived."

And later:

"The defendants appeared specially, as they had a right to do, solely for the purpose of objecting to the jurisdiction. They were not bound to agree to submit their objection to the final decision of the judge of the Circuit Court, and the rule of court which treated the special appearance, without such an agreement, as a general appearance is invalid."

So it was determined in that case that the appearance made in the form and manner as above indicated was a special appearance for the purpose of contesting the authority of the court to take jurisdiction of the person of the defendant, and it was accordingly held that waiver of jurisdiction was not made by such an appearance.

The defendants' first ground as assigned in their pleas is distinctly an objection to the jurisdiction of the court over their persons. The second and third grounds go to the jurisdiction of the court as a court of equity. Thus it is urged by the second ground that the court has no jurisdiction to determine the reasonableness or unreasonableness of a freight rate fixed by the railway companies prior to any determination as to that fact by the Interstate Commerce Commission. This does not involve the jurisdiction of the court over the person as a federal court to take cognizance of the matter, but it goes to the power or right of a court of equity to determine the cause. So it is as to the third objection made by the pleas. The result is, therefore, that the defendant companies have in reality combined a plea to the jurisdiction of the court over the person with a plea to the jurisdiction of the court as a court of equity to determine the cause which is presented by the complainants. As is said in the case of Smith v. McKay, 161 U. S. 355, 358, 16 Sup. Ct. 490, 492 (40 L. Ed. 731):

"When the requisite citizenship of the parties appears, and the subject-matter is such that the Circuit Court is competent to deal with it, the jurisdiction of the court attaches, and whether the court should sustain the complainant's prayer for equitable relief, or should dismiss the bill with leave to bring an action at law, either would be a valid exercise of jurisdiction. If any error were committed in the exercise of such jurisdiction, it could only be remedied by an appeal to the Circuit Court of Appeals."

The question there contested was whether the appeal should have been taken to the Circuit Court of Appeals rather than direct to the Supreme Court of the United States; it being insisted that the appeal was taken upon the jurisdictional question only.

In the present case one of the defendants answered, the other two demurred, but all of them were insisting all the while upon their special plea to the jurisdiction of the court over their respective persons. Unless it be, therefore, that, by combining a ground of want of jurisdiction over the person with the objection that the complainants are without equity as shown by their bill, the defendants have submitted themselves to the territorial jurisdiction of the court, they ought not to be further proceeded against. The case at bar upon principle does not differ materially from the Gibson Case. There the motion to quash the summons and to dismiss the action combined the two grounds as distinctly as here, and the demurrers were based upon like grounds, which were also acted upon and overruled by the court, yet it was determined there was no waiver as respects jurisdiction over the person. It would seem to be deducible, therefore, from these authorities from the Supreme Court, including the Gibson Case, that when the defendant appears specially for the express purpose of challenging the jurisdiction of the court over the person for want of proper service, or upon the ground that the venue is not laid in his judicial district, although he may have combined in his motion or plea to the jurisdiction matter going to the subject of the suit or action, he does not thereby waive jurisdiction over his person. The purpose of the defendant is to be gathered rather from the nature of his appearance. If, being special, it is to insist unquestionably upon want of jurisdiction of the court, there would be no waiver. By appearing generally the party submits himself to the jurisdiction of the court for all purposes of which the court can take cognizance. The manner of the appearance would be taken as an indication of the purpose of the pleader to submit to the court's jurisdiction, notwithstanding an objection to the contrary. But, where the appearance is declared in unmistakable language to be special, the pleader's intendment that it is not so is not always to be deduced from the fact of the combination of an objection to the jurisdiction with an objection to the subject-matter. Of course, the court cannot pass judgment upon the subject-matter without at the same time having jurisdiction of the person, yet if the defendant insists upon his objection to the jurisdiction over his person, and he is in a position to insist thereon, the court ought to give him the benefit of that objection and pass judgment respecting it. In the case at bar all three of the grounds assigned by the plea went to the jurisdiction of the court in one sense—the first to the jurisdiction over the person, and the last two to the jurisdiction of the court as a court of equity. In either case, if the plea was well taken, the bill of complaint would have to be dismissed, but the court could not proceed to a ruling upon the two latter objections, without first entertaining jurisdiction of the person. Now, if it be that the defendants have confused the kind of jurisdiction they were insisting upon, as might well happen, or believed they had a legal right to combine the objections, it nevertheless appears that it was distinctly their purpose to appear specially in the first instance with a view of raising the jurisdictional question, to be disposed of before the merits were reached. We are therefore of the opinion that, under such circum-

stances, the defendants have not waived their personal privilege of being sued within their own district.

[2] Having arrived at this conclusion, there remains but one other question to be determined, and that is whether the defendant companies were suable within the Southern District of California; they being citizens and inhabitants of states other than the state of California. This precise question has been determined in the case of Macon Grocery Co. v. Atlantic Coast Line R. R. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300, favorably to the contention of the appellants. That was a case in equity like this, to enjoin the putting into operation and effect of an alleged unlawful rate during the pendency of the question of the reasonableness or unreasonableness of the rates before the Interstate Commerce Commission. The case was instituted in the Circuit Court of the United States for the Southern District of Georgia. The complainants were citizens of the state of Georgia, and the defendants were railroad corporations of states other than the state of Georgia. Specially appearing for the purpose, the various defendants respectively filed a plea to the jurisdiction of the court, each defendant asserting, in substance, an exemption from being sued in a district of which it was not an inhabitant. Demurrers to the pleas were sustained by the Circuit Court. This ruling was reversed by the Court of Appeals. Coming to the Supreme Court, it was there said:

"While sustaining the demurrer the Circuit Court yet declared: 'It is true that in this case the illegality of the alleged increase in rates must necessarily, in large measure, be determined by the federal law. The legality or illegality of the alleged combination in restraint of trade must be determined by the same law, and it seems to be conceded that, generally speaking, this court would not have jurisdiction of these questions finally except under conditions which do not exist here. That is to say, the court can only for final determination entertain the federal question in the district of which the defendants are inhabitants.' Despite these views, however, as the court considered, if the averments of the bill were taken as true, there was 'a threatened and immediate violation of the federal law of the gravest character to a large number of people,' irreparable injury would be occasioned if the increase in rates was allowed to go into effect, and, as there was not time for those affected to have protection or seek recourse elsewhere, jurisdiction was entertained for the purpose of giving temporary relief."

Thus was presented for determination the sole question whether the Circuit Court of the United States for the Southern District of Georgia sitting as a court of equity had jurisdiction over the persons of the defendant railroad corporations, inhabitants of states other than the state of Georgia, to entertain the bill for the temporary relief of restraining the railroad companies from putting into effect the alleged unlawful rate pending the consideration of the question of its reasonableness or unreasonableness before the Interstate Commerce Commission. After careful and exhaustive consideration, the Supreme Court held that the jurisdiction of the court over the defendants did not exist for granting the relief sought. In concluding the opinion, the court, speaking through Mr. Justice White, had this further to say:

"We are of opinion that the jurisdiction statute of 1888 is applicable, even upon the assumption that the cause of action was alone cognizable in a court of the United States, as the particular venue of the action was not provided for elsewhere than in that statute."

Thus the judgment of the Circuit Court of Appeals was affirmed, reversing the judgment of the trial court.

In the particulars here reviewed the Macon Grocery Company Case overrules the cases of the Northern Pacific Railway Co. v. Pacific Coast Lumber Manufacturers' Association, 165 Fed. 1, 91 C. C. A. 39, and the Union Pacific Ry. Co. v. Oregon & Washington Lumber Manufacturers' Ass'n, 165 Fed. 13, 91 C. C. A. 51, heretofore decided by this court, and it must be so considered. It is due to the learned judge presiding in the Circuit Court to say that his judgment was controlled by these cases; the Macon Grocery Company Case not having been decided at the time.

It is conceded by both parties that a federal question is involved by the present controversy. Indeed, it could not be denied that plaintiffs' right for relief is based upon the regulations of the interstate commerce act as well as the regulations of the Sherman anti-trust act. A federal question being involved, although there be diversity of citizenship, clearly the defendants have the absolute right under the statute of being sued within the district of which they are citizens and inhabitants.

This conclusion renders it unnecessary to pass upon the two remaining contentions of the defendants, namely, that the court is without jurisdiction to determine whether or not the rate prescribed by the defendants for transportation of lemons was reasonable or unreasonable, or whether or not the court can exercise jurisdiction over the defendants here appearing without the presence of other connecting carriers, who were parties to the tariff rate so established.

It results from these considerations that the decree of the court below must be reversed. The cause will be remanded, with directions to dismiss the suit.

HANFORD, District Judge (dissenting). The bill of complaint in this case specifically charges a combination between the defendants to destroy competition in interstate commerce and to create a monopoly contrary to the provisions of the anti-trust law (Act July 2, 1890, 26 U. S. Stat. 209 [U. S. Compiled Stat. 1901, p. 3200] ; 7 F. S. A. 336; Pierce's Fed. Code, pp. 1502, 1503). The fourth section of that law in broad terms confers jurisdiction upon United States Circuit Courts to grant injunctions and restraining orders to prevent violations thereof and the seventh section authorizes individuals suffering injuries by combinations in violation of the law to sue the wrongdoer in a Circuit Court of the United States in any district in which the defendant may be found. It is my opinion that these provisions were incorporated into the anti-trust law for the express purpose of obviating difficulties, which without the exercise of the jurisdiction so conferred would leave shippers of merchandise engaged in interstate commerce and dependent upon interstate carriers practically barred from entering

any forum competent to protect or enforce rights which the law intended should be protected and enforced.

In the case of Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870, the Supreme Court of the United States was careful to say in its opinion:

> "We cannot suppose it was intended that the enforcement of the act should depend in any degree upon original suits in equity instituted by the states or by individuals to prevent violations of its provisions. On the contrary, taking all the sections of the act together, we think that its intention was to limit direct proceedings in equity to prevent and restrain such violations of the anti-trust act as cause injury to the general public, or to all alike, merely from the suppression of competition in trade and commerce among the several states and with foreign nations, to those instituted in the name of the United States, under the fourth section of the act, by district attorneys of the United States, acting under the direction of the Attorney General; thus securing the enforcement of the act, so far as direct proceedings in equity are concerned, according to some uniform plan, operative throughout the entire country."

This, however, is not a suit by meddlesome litigants for the benefit of the country at large. In their bill of complaint the complainants set forth their own special grievances, and aver facts entitling them to injunctive relief to prevent threatened pecuniary loss to them during the pendency of their application to the Interstate Commerce Commission to determine their particular controversies with respect to the rates which interstate carriers may lawfully exact for the transportation of fruits which they must send to markets in other states.

The case, popularly known as "the Merger Case" (Northern Securities Co. v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679), was commenced and prosecuted in the United States Circuit Court for the District of Minnesota against a corporation of New Jersey, a corporation of Minnesota, a corporation of Wisconsin, and several individual defendants, including citizens of New York. It was a suit in equity to enforce the anti-trust law, and the jurisdiction was founded upon section 4. The defendants appear to have voluntarily submitted to the jurisdiction of the Circuit Court by failing to make any contest on the ground of improper venue. Nevertheless the exercise of jurisdiction is a precedent, and the case illustrates the practical necessity for bringing as defendants the members of combinations who may be citizens of different states into a single suit. Congress must have contemplated the impossibility of maintaining a suit against combinations composed of citizens of several states, if each member of the combination should be privileged, and not amenable to the power of the courts to compel obedience to the law, elsewhere than in the district of which he is an inhabitant. In my opinion the fact that the government prosecuted the case does not affect the question of venue.

I have been unable to find any decision of the Supreme Court, construing section 4 of the anti-trust statute, which explicitly denies the right of shippers to maintain a suit in equity in the United States Circuit Court to prevent violations of the anti-trust law especially injurious to them.

Therefore I feel warranted in recording my dissent from the foregoing opinion.