## BACON v. FEDERAL RESERVE BANK OF SAN FRANCISCO et al.

(District Court, E. D. Washington, N. D.   May 10, 1923.)

No. 4205.

1. **Appearance** ⊚⊸9(1)—**"Special appearance" and "general appearance" defined.**

Appearances are of two kinds: Special, for the purpose of testing the sufficiency of service or the jurisdiction of the court; and general, where the defendant waives defects of service and submits to the jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Appearance; Special Appearance.]

2. **Appearance** ⊚⊸9(1)—**Rule as to effect of special appearance not applicable, in view of stipulation of parties.**

Circuit Court rule 22, requiring a special appearance to embody a statement that, if not sustained, the defendant will enter a general appearance, and unless such agreement is included the special appearance will be considered general, has no application, where the parties with the court's approval have established a status by stipulation to extend the time to plead, reserving to defendant the right to object to the jurisdiction, and in any event the failure of the special appearance to embody such agreement is unavailing as a general appearance; the requirement of rule 22 being unavailing, as beyond the power of the court.

3. **Courts** ⊚⊸345—**Conformity Act does not require federal courts to observe state statutes in regard to general and special appearances.**

Rem. Comp. Stat. Wash. § 241, providing that every appearance made in an action shall be deemed a general appearance, unless the defendant in making the same states that it is a special appearance, is not, under the Conformity Act, controlling on the federal courts; but the determination of whether or not an appearance is general or special is for the federal court alone.

4. **Courts** ⊚⊸294—**Suit against Federal Reserve Bank one arising under laws of United States, of which federal court has jurisdiction.**

A suit against a Federal Reserve Bank is one arising under the laws of the United States, over which the District Court of the United States has jurisdiction, under Judicial Code, § 24 (Comp. St. § 991).

5. **Courts** ⊚⊸274—**Corporation is citizen of state of its creation, and its domicile at place of principal office or business; "Inhabitant."**

For the purposes of jurisdiction, a local corporation is a citizen of the state of its creation, and the general rule is that the domicile of a local corporation is in that county, city, or town in which it has its general or principal office, and conducts its business, the word "inhabitant," being variously defined as "one who has established a domicile; one is an inhabitant of his principal place of residence, business, pursuits, and connections; a corporation is regarded as an inhabitant of the district in which its principal office is situated."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inhabitancy—Inhabitant.]

6. **Courts** ⊚⊸274—**Federal Reserve Bank entitled to be sued in district of its habitat as fixed by its certificate of incorporation.**

A Federal Reserve Bank being incorporated under an act of Congress, the Federal Reserve Bank Act, and its activities not being confined to a single state or locality, it cannot be said to be a citizen of any particular state, but is in truth a citizen of the United States, deriving all its powers and rights from the laws of Congress, and its habitat for the purpose of jurisdiction is fixed by the certificate of its organization, and there it is entitled to be sued.

7. **Courts** ⊚⊸274—**Federal Reserve Bank suable "only" in district of its habitat.**

Judicial Code, § 51 (Comp. St. § 1033), providing that a suit between citizens of different states, where the only ground of jurisdiction is

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

289 F.—33

diversity of citizenship, shall be brought only in the district of the residence of either the plaintiff or the defendant, requires that a suit against a Federal Reserve Bank shall be brought in the district of its habitat; the word "only" meaning "exclusive," "nothing more," and the provision of Act July 12, 1882, excepting national banks, having no application to a Federal Reserve Bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Only.]

At Law. Action by Mrs. George T. Bacon against the Federal Reserve Bank of San Francisco and others. On motion to dismiss by the named defendant. Motion granted.

The plaintiff, a resident of the state of Idaho, seeks to recover from the Federal Reserve Bank of San Francisco, Cal., the Farmers' National Bank of Pomeroy, Wash., the First National Bank of Clarkston, Wash. (each of said national banks being organized under the laws of the United States), and George H. Waterman, president of the Farmers' National Bank of Pomeroy and vice president of the First National Bank of Clarkston, damages alleged to have been sustained in excess of $3,000. The complaint was served on an employee of the Spokane Branch of the Federal Reserve Bank on December 14, 1922. The following stipulation was signed by the attorneys for the plaintiff and the attorney for the Federal Reserve Bank of San Francisco, approved by the judge of this court, and filed in the office of the clerk of this court on December 30, 1922:

### "Stipulation Extending Time to Plead.

"It is hereby stipulated by and between counsel for the plaintiff in the above-entitled action and counsel for Federal Reserve Bank of San Francisco, one of the defendants above named, that said defendant Federal Reserve Bank of San Francisco may take and have to and including the 3d day of February, 1923, within which to answer the complaint on file in said action, or to file such other pleading or pleadings or make such other motion or motions in respect thereto and in respect to the cause of action set forth in said complaint as said Federal Reserve Bank of San Francisco may, by it counsel, be advised, including objections which may be raised by such motions to the jurisdiction of the court in which said action is brought."

On February 1, 1923, special appearance was filed by the attorney for the Federal Reserve Bank of San Francisco as follows:

"You will please enter my special appearance as attorney for Federal Reserve Bank of San Francisco, one of the defendants above, in the above-entitled cause, and service of all subsequent papers except writs of process may be made upon said Federal Reserve Bank of San Francisco by leaving same with W. L. Partner, manager Spokane Branch Federal Reserve Bank of San Francisco. Post office address: Spokane, Washington.

"Albert C. Agnew,
"Attorney for Defendant Federal Reserve Bank of San Francisco.

"This appearance is special, and is made only for the purpose of urging a motion to dismiss the above-entitled action as to this defendant."

The Federal Reserve Bank, appearing solely for the purposes of the motion, says to the court that the Federal Reserve Bank of San Francisco is created by an act of Congress known as the Federal Reserve Act (38 Stat. 251); that it has its existence by virtue of said act of Congress and acts amendatory thereof; that its principal office and place of business is in the city and county of San Francisco, Cal.; that it holds the meetings of its stockholders, directors, and executive officers, maintains its records, keeps its seal, and transacts its principal business, in said city and county and state; that it is an inhabitant of the said state and of the judicial district of the Northern division of California, and is not an inhabitant of the state of Washington nor of the Eastern district of Washington. Proofs and affidavits are filed tending to show:

That pursuant to the provisions of the Federal Reserve Act the board of directors of said Reserve Bank established a branch of said Reserve Bank at Spokane; that the powers and duties and functions of said Spokane Branch are defined and limited by its by-laws, and the functions, duties, and operations of said Spokane Branch are subject to the rules, regulations, supervision, and final approval of the head office of said Reserve Bank; that the directors of the Branch Bank have power to rediscount from member banks of the Branch district paper under the provisions of the Federal Reserve Act and regulations of the Federal Reserve Board, within limitations prescribed; that said Branch Bank may clear and collect checks for the accounts of those drawn upon member and nonmember banks located within the territory assigned to it on the same plan followed by the head office.

The Branch Bank may not engage for its own account in open market transactions, bankers' acceptances, trade acceptances, warrants, or government bonds, except to the order and for the account of the head office. The compensation of the officers, clerks, and employees of the Branch Bank are fixed by the head office, subject to the approval of the Federal Reserve Board. All expenditures of the Branch Bank are subject to the approval of the head office. Minutes are to be kept by the discount committee and transmitted to the head office upon approval, and the discount committee is vested with special powers prescribed by the board of directors of the head office.

The directors of the Spokane Branch consist of five members, the manager of which is ex officio chairman of the board, and who is appointed annually by and holds office at the pleasure of the board of directors of the Reserve Bank; two members of the board are appointed annually by the board of directors of the Reserve Bank and hold office at the pleasure of the Reserve Board; two members are appointed annually by and hold office at the pleasure of the Federal Reserve Board at Washington, D. C. That said board acts in an advisory capacity only, and has no power to determine policies or make final decision. That said Spokane Branch is only a business agency of said Reserve Bank, and is so placed, operated, and conducted for the convenience of member banks situated at a distance so remote from the head office that the business of said member banks with the Reserve Bank may be transacted without a great loss of time.

The defendant contends that it has not made a general appearance; that the action should be dismissed because the Federal Reserve Bank of San Francisco is not an inhabitant of this district; that the provisions of the Federal Reserve Act do not enlarge the jurisdiction of this court as to the Reserve Bank; while the plaintiff contends that the defendant bank has made a general appearance by the stipulation which was filed with the approval of the judge, and that it is an inhabitant of this judicial district.

Davis, Heil & Davis, of Spokane, Wash., for plaintiff.

Albert C. Agnew, of San Francisco, Cal., for defendant Federal Reserve Bank of San Francisco.

NETERER, District Judge (after stating the facts as above). [1, 2] Appearances are of two kinds: Special, for the purpose of testing the sufficiency of service or the jurisdiction of the court; and general, where the defendant waives defects of service and submits to the jurisdiction. Emphasis is placed upon rule 22 of this circuit, which provides in substance that the special appearances must embody a statement that, if not sustained, the defendant will enter a general appearance, and unless this agreement is included the special appearance will be considered a general appearance in the cause. The purpose of rule 22 is for the protection of the parties to the cause and the

court. Here the parties have established a status with the court's approval. The purpose of the rule is satisfied by the stipulation and the order. However, the contention of the plaintiff as to rule 22 is of, no avail, since the Supreme Court in Davidson Bros. v. United States ex rel. Gibson, 213 U. S. 10, 29 Sup. Ct. 324, 53 L. Ed. 675, says that it was beyond the power of the court to make and enforce a rule with such conditions as would transform an objection to the jurisdiction into a waiver of the objection itself.

[3] The stipulation must be taken as a whole. The intent and purpose of the context as a whole must control, and, so taken, the intent not to appear generally is apparent. The status of the defendant in this case is differentiated from that of the defendant in Everett Railway, Light & Power Co. v. United States (D. C.) 236 Fed. 806, emphasized by the defendant. In that case the defendant appeared in open court and on oral motion obtained an enlargement of time in which to file "its appearance, motion, or answer." The appearance was 'not special, nor was there a reservation that the motion might be directed to the court's jurisdiction, but presumably to be directed against the complaint on the merits in shaping the issues. In the instant case the question of jurisdiction is specifically reserved. The state statute (section 241, Comp. Stat. Wash.) to which the court's attention is directed, is not, under the Conformity Act (17 Stat. 196), involving the jurisdiction of the federal courts, controlling. Salmon Falls Mfg. Co. v. Midland Tire Co. (C. C. A.) 285 Fed. 214. But the determination of such question is for the federal court alone. Western Loan Co. v. Butte Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Davidson Bros. v. U. S. ex rel. Gibson, 213 U. S. 10, 29 Sup. Ct. 324, 53 L. Ed. 675; S. P. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942; Galveston R. R. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248; Budris v. Coal Co. (D. C.) 251 Fed. 673; Dahlgren v. Pierce (C. C. A.) 263 Fed. 841; Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237.

Section 51 of the Judicial Code (Comp. St. 1033), so far as here material, provides:

"* * * No civil suit shall be brought in any District Court against any person by any original process or proceeding in any other district than that whereof he 'is an inhabitant; but, where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

Section 24 of the Judicial Code (Comp. St. § 991) provides:

"The District Courts shall have original jurisdiction * * * of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority; or (b) is between citizens of different states. * * * "

[4] The first inquiry is the action one arising under (a) the laws of the United States, in so far as it affects the Federal Reserve Bank, must be answered, in the affirmative. American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350, 41 Sup. Ct. 499,

65 L. Ed. 983. The conclusion follows Osborn v. Bank of United States, 9 Wheat. 738. The American Bank & Trust Co. Case, supra, also definitely decides that subdivision 16, § 24, of the Judicial Code, does not reach forward and include the Federal Reserve Banks within the phrase "national banking associations."

The next inquiry is: Is the defendant Reserve Bank an inhabitant of the state of California? The principal place of business of the defendant Reserve Bank is in San Francisco, all of the business is directed from that office except such as is reviewed by the Federal Reserve Board, and the officers reside there. The contention of the plaintiff is that the Reserve Bank, being organized under the laws and Constitution of the United States, is not a local, but a domestic, corporation, and the purpose of operating within a given district makes the term "inhabitant" coextensive with the district, and not of one particular place within such zone or territory. Many cases are cited, all of which are predicated upon the citizenship or habitat of a corporation of a particular state. McCormick Harvesting Co. v. Walthers (1890) 134 U. S. 41, 10 Sup. Ct. 485, 33 L. Ed. 833; Ex parte Shaw (1892) 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; In re Keasbey & Mattison Co., 160 U. S. 222, 16 Sup. Ct. 273, 40 L. Ed. 402; Macon Grocery Co. v. Atlantic C. L. R. Co. (1909) 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300; General Investment Co. v. L. M. S. Ry. Co. (1922) 43 Sup. Ct. 106, 67 L. Ed. ——; Wilson v. Western Union Tel. Co. (C. C. 1888) 34 Fed. 561; Halstead v. Manning (C. C. 1888) 34 Fed. 565; Gormully & Jeffery Mfg. Co. v. Pope Mfg. Co. (C. C. 1888) 34 Fed. 818; affirmed in Preston v. Fire Extinguisher Co. (C. C. 1888) 36 Fed. 721; Anderson v. Germain et al. (C. C. 1891) 48 Fed. 295; Sunderland Bros. v. C., R. I. & P. Ry. Co. (C. C. 1908) 158 Fed. 878; Memphis Cotton Oil Co. v. I. C. Ry. Co. (C. C. 1908) 164 Fed. 290; Imperial Colliery Co. v. C. & O. Ry. Co. (C. C. 1909) 171 Fed. 589; Cound v. A., T. & S. F. Ry. Co. (C. C. 1909) 173 Fed. 527; Smith v. Detroit & T. S. L. R. Co. (C. C. 1909) 175 Fed. 506; Whittaker v. I. C. Ry. Co. (C. C. 1910) 176 Fed. 130; Newell v. B. & O. Ry. Co. (C. C. 1910) 181 Fed. 698; S. P. Co. v. Arlington Heights Fruit Co. (1911) 191 Fed. 101, 111 C. C. A. 581; Trapp v. B. & O. Ry. Co. (D. C. 1922) 283 Fed. 655.

[5] It is primer law that a local corporation is a citizen of the state of its creation, and the general rule is that the domicile of a local corporation is in that county, city, or town in which it has its general or principal office and conducts its business. First National Bank of Everett v. Wilcox, 72 Wash. 473, 130 Pac. 756, 131 Pac. 203. Chief Justice Waite, in Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853, said that a corporation can have its legal home only at the place where it is placed under the authority of its charter, but may have its agents transact business anywhere, unless prohibited by its charter or excluded by local laws.

"Inhabitant is legally equivalent to one who has established a domicile." Standard Dictionary.

"Inhabitant—One who has his domicile in a place." Bouvier's Law Dict.

"One may be designated as an inhabitant of that place, which constitutes the principal seat of his residence, of his business, pursuits [and] connections." Phillips v. Boston, 183 Mass. 314, 67 N. E. 250.

"A corporation is regarded as a resident of the locality where its principal office is situated." People, etc., v. Marens, 62 Misc. Rep. 317, 322, 116 N. Y. Supp. 189, 192.

The Supreme Court in Galveston R. R. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248, said:

"In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its corporate business is transacted, even though it may transact its most important business in another place. It is but a corollary of the propositions laid down in the three cases above referred to that, if the corporation be created by the laws of the state in which there are two judicial districts, it should be considered an inhabitant of that district in which its general offices are situated, and in which its general business, as distinguished from its local business, is done."

The Supreme Court in Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768, said:

"The word 'inhabitant' * * * was * * * used, not in any larger meaning than 'citizen,' but to avoid the incongruity of speaking of a citizen of anything less than a state, when the intention was to cover, not only a district which included a whole state, but also two districts in one state. * * * As to natural persons, therefore, it cannot be doubted that the effect of this act * * * is that the phrase 'district of the residence of' a person is equivalent to 'district whereof he is an inhabitant.' * * * In the case of a corporation, the reasons are, to say the least, quite as strong for holding that it can sue and be sued only in the state and district in which it has been incorporated, or in the state of which the other party is a citizen."

[6] The defendant Federal Reserve Bank is not a citizen of California, it being incorporated under an act of Congress; its activities are not confined to a single state or locality, but are carried on in different states. The Supreme Court in Bankers' Trust Co. v. Texas & Pac. Ry., 241 U. S. 295, at page 309, 36 Sup. Ct. 569, at page 573 (60 L. Ed. 1010) said:

"Of course it is a citizen of the United States in the sense that a corporation organized under the laws of one of the states is a citizen of that state, but it is not within the clause of the Fourteenth Amendment, which declares that native-born and naturalized citizens of the United States shall be citizens of the state wherein they reside, nor has Congress said that it shall be regarded as possessing state citizenship for jurisdictional purposes, as is one in respect of national banks by section 24, par. 16, of the Judicial Code. * * *"

Under the Federal Reserve Bank Act (38 Stat. 251), the Secretary of the Treasury, Secretary of Agriculture, and the Comptroller of the Currency, acting as "the Reserve Bank Organization Committee," shall designate not less than eight nor more than twelve cities, to be known as Federal Reserve cities, and shall divide the continental United States, including Alaska, into districts, each to contain only one of such reserve cities. The committee shall supervise the organization in each of the cities designated of a Federal Reserve Bank, which shall include in its title the name of the city in which it is situated. Section 2. Each Federal Reserve Bank shall establish branch banks within the Federal Reserve district in which it is located. Such branch banks shall be operated by a board of directors under rules

and regulations approved by the Federal Reserve Board, four of said directors to be selected by the Reserve Bank and three by the Federal Reserve Board, and to hold office during the pleasure respectively of the parent bank and the Federal Reserve Board. The Reserve Bank shall designate one of the directors as manager. Section 3.

When the Federal Reserve districts have been established by the organization committee, a certificate is filed with the Comptroller of the Currency, showing the geographical limits of such districts and the Federal Reserve city designated in each of such districts. The Federal Reserve Board consists of the Secretary of the Treasury and the Comptroller of the Currency as ex officio members, and five members appointed by the President. The Reserve Board is empowered at its discretion to examine the accounts, books, and affairs of every Federal Reserve Bank and every member bank, and shall publish weekly a statement showing the condition of each Federal Reserve Bank, and a consolidated statement of all Federal Reserve Banks. The powers of Federal Reserve Banks are prescribed and limited by the Federal Reserve Board with relation to dealings in commercial paper, gold transactions, bonds and notes, commercial exchange, discount rates, foreign accounts and agencies, and all relations pertaining to the business for which they are organized. Section 14.

The Federal Reserve Bank derives all of its rights from the laws of Congress, and a suit against it on account of its conduct arises under the laws of the United States. Osborn v. Bank of United States, 9 Wheat. 828, 6 L. Ed. 204. It has the right to sue and be sued in all courts of law or equity within the United States. Section 4. There is not a suggestion that intimates anything other than federal relation. The defendant Federal Reserve Bank bears the same relation to the United States, or at least to the Federal Reserve district, as a corporation does to the state of its creation. It is a creature of the Congress. It is a citizen, if it may be so termed, of the United States. It is transacting business under and by virtue of national authority. The habitat of the bank is fixed by the certificate of organization, and established throughout the record, as San Francisco.

[7] Section 51, supra, has general application to all nonresident defendants, including corporations that seek advantage of its provisions, except national banks (Act July 12, 1882, 22 Stat. 162) and railway corporations organized under federal law (Act Jan. 28, 1915, 38 Stat. 803). The pertinent clause of this section forbids any suit to be brought in any district other than that whereof the defendant is an inhabitant, unless founded only on diversity of citizenship, then in the district of the residence of the plaintiff or the residence of the defendant. "Only" means (Webster) "exclusive," "nothing more," so in any event the jurisdiction here must be determined by the habitat of the defendant Reserve Bank. Keasley v. U. S., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402; City of Memphis v. Board of Directors, 228 Fed. 802. Van Dresser v. O. R. & N. Ry. Co. (C. C.) 48 Fed. 202, must have been determined upon the jurisdiction of the court as fixed prior to the Act of August 13, 1888 (25 Stat. 433), which prior act included the phrase "or in which he may be found." Judge Hanford, on page 203, said:

"I hold that it is liable to be sued in the national courts in any district wherein it may be found doing business and having an agent or representative upon whom service of process can be made."

It is fundamental that the court has jurisdiction only as fixed and limited by the Congress, and its duty is plain. Chief Justice Marshall, in Bank v. De Veaux, 9 U. S. (5 Cranch) 61, 3 L. Ed. 38, said:

"The duties of this court, to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of equal obligation."

There are doubtless reasons why the Federal Reserve Bank should be considered an inhabitant of every district in which a branch is established, but that is a matter of legislation by the Congress. The law contemplates that every corporation or organization shall ·have but one habitat, and that shall be in the district where its general offices are located and where the certificate of organization fixes it and the general business done.

The Supreme Court, in the Matter of Dunn, 212 U. S. 374, at page 388, 29 Sup. Ct. 299, 53 L. Ed. 558, in which it was contended that the defendant in the pending suit concerning the controversy was a resident of the Southern district ·of New York, the court held that the record disclosed that the company maintained an office in Dallas county, Tex., and that the Senior Vice President lived in Dallas, and that for many years the company had designated Dallas as its general office, that all of the acts of the board of directors taken in New York City were subsequently affirmed by the meeting of the board in Dallas before they were considered effective, and held that the corporation could be sued in the Eastern district of Texas.

My attention is called to Farmers' & Merchants' Bank v. Federal Reserve Bank (D. C.) 286 Fed. 566. The issue before the court was stated by Judge Cochran at the opening of his decision as follows:

"This case is before the court on the defendant bank's motion to quash the service of process upon it, on the ground that it is a national corporation, and was not, at the time of such service, doing business in this state, as required, in order to subject it to suit therein."

On page 567 the judge says:

"It is conceded, as it must be, that at the time this suit was .brought the individual defendant was acting for the defendant bank as its agent, and had been so acting for it for over a year and a half before the suit was brought. The defendant bank's position is that the doing of business in this state of a particular *character*, at the time suit was brought, was *essential to jurisdiction*, and that *such action on its behalf did not constitute* * · * * *business of that character*. As to *whether this position* is sound is the *question* before 'me." (Italics mine.)

The issue is dissimilar from the issue presented here. The habitancy of the bank in that district appears to have 'been waived, and the sole issue was the motion to quash the service of the summons, as not authorized, because not served upon a person authorized to be served, as the business required of the particular character was not done. In the instant case there is no question as to the sufficiency of the service if the defendant is suable in this district, it not having waived the right to exemption from suit. Aside from the foregoing quotations as

to the issue there presented the thread of the thought is carried throughout the decision. The "synthesis" yielded by the cases examined and analyzed by Judge Cochran is illustrated at page 578, where it is said:

"The plaintiff's sic volo is not sufficient of itself to confer jurisdiction. *The corporation must be suable there.* [Italics mine.] There is therefore a dualism—a real dualism—in all such cases. But it is not the dualism heretofore considered. It is this: The corporation must be suable in the foreign jurisdiction; i. e., it must be reasonable and not arbitrary for it to be sued therein, and process must have been served therein on an authorized agent."

At page 581 the court said:

"This brings me to the 11 decisions in the cases in which jurisdiction was upheld. In upholding jurisdiction, it must be taken that the court decided, not only that the requirement as to service of process was not, but that the defendant was suable in the jurisdiction in which suit was brought. * * *"

On page 589 the thought is repeated as follows:

"But, in order to the existence of jurisdiction, it is not sufficient that service of process on the corporation's representative therein be had. *The corporation must be suable in the foreign jurisdiction,* [italics mine], and in order to this it must be reasonable that defendant should be subject to suit therein."

Service of process in the instant case was made upon an authorized agent, but the defendant Federal Reserve Bank was not suable in this district by statutory limitations, under section 51, Judicial Code, and by the bank under a special appearance invoking the provisions of section 51, the court is concluded.