FIRST NAT. BANK OF LAKE CHARLES v. LANZ.
In re WILCOX.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1913.)

No. 2,333.

1. BANKRUPTCY (§ 161*)—"PREFERENCE"—VALIDITY OF PLEDGE.

A pledge of corporate stock by an insolvent debtor more than four months prior to his bankruptcy to secure an antecedent debt does not constitute a preference, although the stock is sold by the creditor within the four-months period, and is valid where by the law of the state a transfer on the books of the corporation is not necessary to perfect the pledge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKS AND BANKING (§ 260*)—NATIONAL BANKS—LOANS ON SECURITY OF BANK'S OWN STOCK—VALIDITY.

The acceptance by a national bank of a pledge of its own stock to secure a loan, although in violation of Rev. St. § 5201 (U. S. Comp. St. 1901, p. 3494), is valid, except as against the United States, after the pledge has been executed by a sale.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 977–978, 983, 984, 986½–990; Dec. Dig. § 260.*]

3. BANKRUPTCY (§ 163*)—VOIDABLE PREFERENCE—MORTGAGE OF HOMESTEAD.

Under Const. La. arts. 244, 246, which give a debtor a homestead exemption of not exceeding $2,000 in value, but provide that it may be waived in favor of a privileged creditor, a mortgage given by an insolvent debtor within four months prior to his bankruptcy on his homestead to secure an antecedent debt, although accepted by the creditor with reason to believe that it was intended as a preference, could only operate as a preference as to the excess in value of the property over $2,000, but as to such excess it was voidable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 163.*]

Appeal from the District Court of the United States for the Western District of Louisiana; Aleck Boarman, Judge.

In the matter of C. B. Wilcox, bankrupt; H. W. Lanz, trustee. From an order disallowing its claim as a secured claim, the First National Bank of Lake Charles appeals. Reversed.

This is an appeal from the order of the District Court, affirming an order of the referee in bankruptcy, disallowing the claim of the appellant bank as a secured claim against the estate of the bankrupt, and directing the cancellation of a mortgage and notes given the bank by the bankrupt on which the claim was based, and directing the bank to pay to the trustee the proceeds of the sale of certain shares of its capital stock, received by it in pledge from the bankrupt, to secure its claim, and which it had sold and applied the proceeds in part payment of its claim. The claim of the bank was allowed as an unsecured claim against the bankrupt estate.

The bankrupt, C. B. Wilcox, was engaged in the export lumber business. In the course of this business it had been his custom for some time prior to the bankruptcy to borrow money from the appellant and other banks on the security of trust receipts or certificates, reciting that he held certain lumber therein described, which was in his possession and under his control, and subject to such disposition as he saw fit to make of it, in trust for the benefit of the holder and to secure its claim. This course of business had prevailed between the bankrupt and the appellant for about two years before the date of the filing of the petition, which was the 22d of June, 1909. At the time of the filing of the petition in bankruptcy, the bankrupt was indebted to the appellant in the sum of $4,382.66. On January 1, 1909, the indebtedness was $7,727.21. Up to January of the same year the appellant had held as its only security for this indebtedness trust receipts in the amount of $7,500. Becoming dissatisfied with this class of security, it then requested the bankrupt to reduce his loan and to give other or additional security. A payment of $1,500 was thereupon made by the bankrupt. On February 1, 1909, the bankrupt pledged with the bank a certificate covering 10 shares of its own capital stock to secure his indebtedness to the bank, and on March 12, 1909, authorized the bank to sell this stock at $190 a share and apply the proceeds on the note, which was done. On March 12, 1909, within four months of the date of bankruptcy, the appellant took from the bankrupt, to secure the balance of his indebtedness to it, a mortgage, with waiver of exemption, on the bankrupt's homestead in the town of Lake Charles, which was recorded by it.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The questions presented by the record involve the validity of the pledge of bank stock and of the mortgage of the bankrupt's homestead. The referee determined the mortgage to be a preference, and disallowed it entirely as a secured claim, and directed its cancellation and that of the notes secured by it, and also determined the pledge of the bank stock to be invalid, because of want of authority to the bank to accept a pledge of its own capital stock, and directed it to pay the proceeds of the sale of the stock to the trustee; and the District Court confirmed the order.

J. D. Cline and A. M. Barbe, both of Lake Charles, La., for appellant.

C. N. Young, of Lake Charles, La., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1, 2] The pledge of bank stock having been given to and received by the bank more than four months before bankruptcy, it cannot be held to be a preference, though given to secure a pre-existing unsecured debt. The sale within four months, pursuant to the pledge, would not affect this result. Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136. The delivery of the certificate, under Louisiana law, is effectual to perfect the pledge, without transfer on the books of the corporation. Crescent City Mineral Water Co. v. Deblieux, 40 La. Ann. 155, 3 South. 726; Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945. Delivery of the certificate occurred February 1, 1909. Section 5201, Revised Statutes (U. S. Comp. St. 1901, p. 3494), does not prohibit a national bank from accepting a pledge of its own capital stock, when to do so is necessary to secure the payment of an unsecured pre-existing debt, and so prevent loss to the bank. The record clearly shows that the taking of this stock in pledge was for the purpose of, and did in fact, prevent loss to the bank in this way. It is also well settled that the United States alone can complain of a violation of this section by a national bank, at least after the contract of pledge has been executed by foreclosure. National Bank of Xenia v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778, 27 L. Ed. 592. For these reasons we think the appellant was entitled to the proceeds of the sale of the pledged stock, and the order directing it to be paid to the trustee was erroneous.

[3] The order of the court below also sets aside the mortgage on the bankrupt's homestead as an illegal preference under section 60 of the Bankrupt Act, in its entirety. The Constitution of the state of Louisiana confers on a debtor a homestead exemption of not exceeding $2,000 in value, and provides, in case of excess, that amount shall be returned to him out of the proceeds of any sale under execution, and also provides a method of waiver. Constitution of Louisiana, articles 244 and 246. Construing this section, the Supreme Court of Louisiana has held that in case there is a creditor as to whom the exemption does not apply, upon forced sale of the homestead, the creditor, with such privilege, is first paid from the proceeds, the debtor then receives his exemption of $2,000, and the creditors, without such privilege, take the surplus if any remains. In re Penn, 130 La. 742,

58 South. 554. In this case the appellant was a creditor with a privilege, having a mortgage on the bankrupt's homestead, accompanied by a duly executed and recorded waiver. To the extent of the homestead exemption of the bankrupt the mortgage could not operate as a preference, since the general creditors were not entitled to the exempt property in any event. Mills v. Fisher, 159 Fed. 897, 87 C. C. A. 77, 16 L. R. A. (N. S.) 656; In re Tollett, 106 Fed. 866, 46 C. C. A. 11, 54 L. R. A. 222. Ordinarily, when a preferential transfer is set aside, the exempt property is restored to the bankrupt's estate, and then becomes subject to his exemptions (Collier [9th Ed.] p. 204), and should be set aside as exempt to him by the trustee. In this case the property exceeds in value the bankrupt's exemption, and for that reason it is necessary that it be administered through the bankrupt court, in order that the estate may profit by the excess. Upon sale of the property either the appellant or the bankrupt would, as against the trustee in bankruptcy, be entitled to the amount of the homestead exemption out of the proceeds of the sale. As between the appellant and the bankrupt, if controversy arises, their respective rights to the amount of the exemption would have to be worked out in the state court. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061. If either consents to the payment by the trustee to the other, it would be proper for the trustee to make payment to such other. In the absence of such consent, it will be the duty of the trustee to hold the amount of the exemption to abide the decision of the state court, and then pay it to the appellant or to the bankrupt according to the award of the state court. The mortgage and the notes, after being credited with whatever amount the appellant receives in bankruptcy, should be surrendered to appellant.

The inquiry remains whether the mortgage, as to the excess over the bankrupt's homestead exemption, was an illegal preference and properly set aside at the instance of the trustee. The mortgage was given on March 12, 1909, within four months of bankruptcy and to secure a pre-existing debt. The appellant contends (1) that it was given in substitution of other securities, which were surrendered contemporaneously to the bankrupt, and (2) that, when accepted, appellant had no reasonable ground for believing that a preference was intended or would be effected by it. The bankrupt's insolvency was not seriously controverted.

The securities which appellant contended were surrendered by it were trust receipts for lumber of the face value of about $7,500. These trust receipts were mere declarations by the bankrupt that he was holding the lumber described in them for the use of the appellant. According to the course of business between the appellant and the bankrupt, possession of the lumber was retained by the bankrupt, with full control over the lumber and the right to dispose of it at his will, and without liability to account for the specific proceeds of the sale to the appellant. Such a transaction does not effect a pledge or any other valid security known to the general law, nor does any statute of Louisiana cover it. The security of the trust certificates being void in law, their surrender afforded no new consideration for the giving of the mortgage on the homestead.

Did the appellant have reasonable ground for believing that a preference was intended and would be effected by the taking of the mortgage? The referee so found from the facts, and the court sustained his findings. The evidence shows that in January of 1909 the appellant became dissatisfied with the condition of the bankrupt's account and insisted upon the reduction of his loans and a change of security from that afforded by the trust receipts. The bankrupt made a payment and gave appellant his bank stock as collateral early in February. On March 12th he executed to appellant a mortgage on his homestead, with a waiver. At the time he did so he informed appellant's cashier that the bank stock already pledged and his homestead were all of his assets, other than the lumber covered by the trust receipts. The cashier knew that he was also indebted to other banks and that they held similar security. The lumber did not sell for enough, when sold by the trustee, to pay the costs of administration. In view of these undisputed facts, we are not disposed to disturb the finding of the referee—approved by the District Judge—that the appellant, at the time it accepted the mortgage on the bankrupt's homestead, had reasonable grounds for believing that the bankrupt was insolvent when he gave the mortgage, and that a preference was thereby intended and effected; and the order of the court below, so far as its effect is to set aside the mortgage as a preference, is approved.

The order of the District Court, confirming the order of the referee from which the appeal is taken, is reversed, and the cause remanded to the District Court for further proceedings in conformity to the opinion of this court.