### DAVIS et al. v. HAYDEN et al.

#### (Circuit Court of Appeals, Fourth Circuit. November 9, 1916.)

#### No. 1422.

1. APPEAL AND ERROR ☞71(3)—APPEALABLE ORDERS—ORDER GRANTING PRELIMINARY INJUNCTION.

While a temporary restraining order, granted without a hearing, is not ordinarily appealable, where, after a subsequent hearing on a motion for a preliminary injunction and counter motions to vacate and dismiss, an order is entered refusing to dissolve and in terms continuing the restraining order in force, such order is in effect one granting a preliminary injunction, and is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 393–398; Dec. Dig. ☞71(3).]

2. RECEIVERS ☞6—GROUNDS FOR APPOINTMENT—CONSERVATION OF PROPERTY OF INDIVIDUAL DEBTOR.

A federal court of equity is without jurisdiction to appoint a receiver of the assets of an individual debtor alleged to be solvent, and to enjoin the enforcement of claims against him, at the suit of a mere contract creditor, who has no lien or other security, and who asserts no right to subject any specific property to the payment of his debt.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 12; Dec. Dig. ☞6.]

3. COURTS ☞371(2)—FEDERAL COURTS—EQUITY JURISDICTION—ENLARGEMENT BY STATE STATUTE.

Jurisdiction to appoint a receiver, contrary to the general principles of equity jurisprudence, cannot be conferred upon a federal court of equity by a state statute authorizing such appointment by courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 973; Dec. Dig. ☞371(2).]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Suit by Jacob S. Hayden against Josiah V. Thompson and others. From an order granting a preliminary injunction and denying a motion to dismiss, Ellen G. Davis and Cornelia B. Bassel, executrices of

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the will of John Bassel, deceased, and others, defendants, appeal. Reversed.

R. S. Douglass and George M. Hoffheimer, both of Clarksburg, W. Va. (William H. Taylor and Melvin G. Sperry, both of Clarksburg, W. Va., and Charles McCamic and James Morgan Clarke, both of Wheeling W. Va., on the brief), for appellants.

John J. Coniff, of Wheeling, W. Va., for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The underlying question in this case is the question of jurisdiction. Briefly stated, the material facts are these: During a period of years prior to January 19, 1915, when this suit was commenced, the appellee, Josiah V. Thompson, a citizen of Pennsylvania, had become the owner of extensive tracts of coal lands and other properties in that state and the state of West Virginia. His holdings in the former state amounted to over 78,000 acres, and in the latter state to some 26,000 acres. On the date named this bill was filed, the nature and purpose of which will be presently explained. In the meantime, and on various dates between December 3, 1914, and January 19, 1915, certain creditors of Thompson, citizens of West Virginia, had brought suits against him in the circuit court of Harrison county and levied attachments upon all or a large portion of his coal lands in that state, and these suits were pending and undetermined when the bill of complaint herein was filed.

The plaintiff in the bill is the appellee Hayden, and Thompson was the sole defendant. Hayden was the holder of two past-due notes of Thompson, each for $10,000, but his claims had not been reduced to judgment, and he had no lien or other security; he was a simple contract creditor. After setting out the notes, and averring that the amounts thereof were admittedly due, without offsets or deductions of any sort, the bill alleges, among other things not needful to recite, that the total indebtedness of Thompson was approximately $22,000,000, of which about $7,000,000 was unsecured; that the balance of $15,000,000 was secured by mortgage or pledge of substantially all his assets, "which assets are of the fair value of $70,000,000, leaving nothing but equities out of which your orator and other unsecured creditors can be paid," and that such creditors could not collect their claims by execution; that the equities belonging to Thompson were worth approximately $48,000,000, and that if his assets could be conserved and sacrifice prevented they could be sold at even very low prices for a sum largely in excess of the indebtedness to both secured and unsecured creditors; that Thompson was unable to pay the interest already past due upon a part of his obligations, or to provide for the interest soon to become due on other obligations; that suits had been brought against him by certain creditors, and judgments entered on which executions were threatened; that other creditors were threatening to sell the collaterals held by them as security for their claims; and that in consequence there was great danger that early and forced sales under mortgages and

pledges would exhaust the equities of Thompson and leave little or nothing for the payment of plaintiff and other unsecured creditors. Other allegations related to the situation of the properties, the fact that certain tracts were owned by Thompson in common with other parties, the depressed condition of the market for coal lands, and the like. The relief prayed for was the appointment of a receiver and an injunction, in substance restraining creditors, whether secured or unsecured, from taking any proceedings for the collection of their debts.

On the day this bill was filed, at Wheeling, in the Northern district of West Virginia, Thompson was conveniently in that city and at once accepted service of the subpœna. On the same day he filed his answer, admitting the allegations of the bill, averring that his assets were "fairly and conservatively worth more than three times the amount of my indebtedness," and consenting to the appointment of a receiver, and thereupon a receiver was immediately appointed according to the prayer of the bill. Thereafter, on April 15, 1915, the plaintiff filed in open court an "amended and supplemental bill," which reiterated the allegations of the original bill, recited the previous order appointing a receiver and enjoining creditors, alleged that the receiver had qualified and taken possession of all the assets and property of Thompson in West Virginia, and set out a long list of creditors in that state, with the amounts due to them and the securities, if any, held by them respectively, and the proceedings, if any, severally taken by them to enforce their claims. All these creditors were named as defendants, but it appears that no subpœna to answer was ever issued. On the same day a temporary restraining order was entered, to the like effect in substance as the original injunction, which order by its terms was to remain in force "only ten days from this date, within which time plaintiff shall give notice to the parties of a motion for preliminary injunction as required by the seventy-third equity rule."

The motion accordingly made was heard on the 24th of April, and with it the motions of certain defendants, all or most of whom had levied attachments, to dissolve the injunction, vacate the order appointing a receiver, and dismiss the original and amended bills for want of jurisdiction and other reasons. The order made that day, after reciting that the court, "being not now advised what order to enter in the premises, thereof takes time to consider," gave the parties 15 days to file briefs, and continued the temporary restraining order in force "until this motion for a preliminary injunction can be determined." The situation thus brought about remained practically unchanged, so far as the record discloses, until the 29th of October, when a memorandum opinion was filed and an order entered which, in effect, as we hold, denied the motions to dismiss and granted a preliminary injunction. It was provided, however, that the injunction be so far modified as to allow creditors to prosecute their claims to judgment, but not to enforce the judgments by execution sales or otherwise. From that order appeal was taken to this court.

[1] A motion is made here to dismiss the appeal on the ground that

it was prematurely brought; the contention being that the order of October 29th was not an interlocutory order granting a preliminary injunction, but merely a modification and continuance of the temporary restraining order of April 15th, and therefore not appealable. We are unable to sustain this contention. In terms, it is true, the "restraining order" was "continued" until further order of the court; but the substance and intent of what was done must be regarded rather than the form of words employed. As was said in Western Union Tel. Co. v. United States & M. T. Co., 221 Fed. 545, 137 C. C. A. 113:

"Conceding that a restraining order granted without a hearing is not ordinarily appealable, yet a restraining order which is granted, or sustained, or denied, after a hearing of the parties, and which in effect and in everything but name is a temporary injunction, falls within the evident meaning of the statute, and is reviewable by appeal, and the orders in question were of that character."

So in this case. The first injunction was binding, under the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730), upon no one but Thompson, because he was the only defendant in the original bill. When the amended bill was filed, making other creditors defendants, an ex parte restraining order was granted for 10 days from its date. Within that time there was a full hearing upon notice of plaintiff's motion for a preliminary injunction and defendants' motions to vacate and dismiss. Desiring further time to consider, the court continued the restraining order until the matter could be more deliberately decided. There surely was no occasion after that to again continue the restraining order for the same purpose, and we are clearly of opinion that the subsequent order of October 29th should not be so construed. On the contrary, it was in intention, and certainly in practical effect, a decision of the pending applications, granting to the plaintiff a preliminary injunction and denying the motions made by defendants. Indeed, in the memorandum filed with the order, it is referred to as an "injunction"; and in the order allowing an appeal it is described as "an interlocutory order or decree continuing an injunction and refusing to dissolve an injunction." In short, it was a final disposition of the motions made by the respective parties, which were heard and submitted, and on which decision was reserved, some six months before, and as such it was plainly appealable. The motion to dismiss must be denied.

[2] On the merits of the controversy it will suffice to outline our conclusions without extended argument. We put aside the contention of appellants that the court below had no jurisdiction to appoint a receiver, because the property of Thompson in West Virginia was already in the custody of the courts of that state by virtue of the attachments which certain creditors had levied. Without questioning the rule of law or comity on which this contention is based, or considering how far it is here decisive, we prefer to rest our decision upon the broader ground that the facts alleged in plaintiff's bills present no case for the cognizance of a federal court of equity. It is to be noted that plaintiff is a mere contract creditor, without lien or security of any kind, and without the claim of right to charge any

specific property with the payment of his debt; that Thompson, though temporarily embarrassed by lack of ready money, is asserted to be abundantly solvent; that the suit was evidently brought in pursuance of a prearranged plan between the plaintiff and Thompson; and that it was the obvious purpose of the suit, not to enforce the plaintiff's own demand, but to enable Thompson, by means of a receivership and injunction, to prevent his creditors from taking any steps to collect their claims. And the case for relief amounts only to this: That certain creditors of Thompson have obtained judgments against him on which executions may issue; that other creditors have levied attachments upon his property; that still others threaten to sell the collaterals held in pledge, as they have the right to do; and that in consequence the assets of Thompson are liable to become so depleted that unsecured creditors will not be paid.

We are clearly of opinion that these facts are insufficient to warrant the action of the court below. In its most favorable aspect the plaintiff's case comes under no recognized head of equity jurisdiction. Indeed, we take it to be an established principle of jurisprudence that a court of equity is without power, in the absence of statutory authority, to appoint a receiver of the assets of an individual debtor, or to enjoin the prosecution of claims against him, at the suit of a mere contract creditor who has no lien or other security, and who asserts no right to subject any specific property to the payment of his debt. Equity may aid in a proper case when legal remedies have been exhausted, but cannot be resorted to in the first instance. The authorities to this effect are numerous and of uniform import. Among the leading cases which illustrate and apply the doctrine are Thompson v. Railroad Companies, 73 U. S. (6 Wall.) 134, 18 L. Ed. 765, Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, Cates v. Allen, 149 U. S. 452, 13 Sup. Ct. 977, 37 L. Ed. 804, and Hollins v. Brierfield C. & I. Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113. In the last-named case the Supreme Court said:

"The plaintiffs were simple contract creditors of the company, their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims; and this, notwithstanding a statute of the state may authorize such a proceeding in the courts of the state."

The only case cited by appellees, and the only one we have been able to find which can be claimed to support their contention, is In re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403. But this was the case of an insolvent corporation, which, for reasons that have often been pointed out and need not here be repeated, stands upon an entirely different footing from an individual debtor, and especially an individual debtor whose solvency is affirmed by the creditor asking the interposition of a court of equity. In short, we are convinced that the appointment of a receiver and the restraining of creditors in this case, upon the facts al-

leged by both parties to the original bill, are not only without support in principle or precedent, but manifest the attempted exercise of powers which, as repeated decisions declare, are not possessed by a federal court. And this leaves out of view the apparent violation of the act of Congress (Rev. Stat. § 720; Judicial Code [Act March 3, 1911, c. 231] § 265, 36 Stat. 1162 [Comp. St. 1913, § 1242]) which prohibits the granting of an injunction "to stay proceedings in any court of a state," except as authorized by laws relating to proceedings in bankruptcy. And so this court has held in Maxwell v. McDaniels, 184 Fed. 311, 106 C. C. A. 453, a case which, upon the question of jurisdiction, seems not distinguishable from the one at bar. We quote from the opinion as follows:

"The complainant had no right for two reasons to ask that the court should enjoin the prosecution of suits against his debtor in the state courts of West Virginia. If A. is indebted to * * * B. and C., it takes no citation of authority to show that B. cannot ask a court of equity to enjoin C. from suing A., merely because C. by beginning his suit first may get a lien upon A.'s property before B. does. In the second place, if the complainant had any standing in a court of equity to ask that proceedings at law be enjoined, the statutes of the United States expressly prohibit a federal court of equity from granting that relief when the proceedings sought to be enjoined are pending in a state court. * * * A court of equity of the United States has no jurisdiction, at the instance of a simple contract creditor whose claim has not been reduced to judgment, to appoint a receiver for property upon which he asserts no specific lien."

[3] We are asked not to follow Maxwell v. McDaniels, because it is said the court overlooked a statute of West Virginia (Code of 1913, § 4974) which provides as follows:

"A court of equity may in any proper case pending therein, in which the property of a corporation, firm or person is involved, and there is danger of the loss or misappropriation of the same or a material part thereof, appoint a special receiver of such property or of the rents, issues and profits thereof, or both."

Even if it be granted that this statute was not brought to the attention of the court, and therefore not considered, there are two answers to the argument based upon its provisions. The first is that the equitable powers now in question cannot be conferred upon the federal courts by the Legislature of a state, as was distinctly held in Hollins v. Brierfield C. & I. Co. supra, wherein the Supreme Court said:

"The line of demarcation between legal and equitable remedies * * * cannot be obliterated by state legislation."

The other answer is that we are bound to accept the construction of a state statute by the highest court of the enacting state, and the Supreme Court of Appeals of West Virginia has held that the statute referred to does not authorize the appointment of a receiver, in such a case as is here presented, at the suit of a mere contract creditor. Rainey v. Freeport Coal Co., 58 W. Va. 424, 52 S. E. 528; Thompson v. Adams, 60 W. Va. 463, 55 S. E. 668. In the latter case it was said:

"Under our statute * * * a receiver will be appointed where there is danger of loss or misappropriation of the property, or a material part thereof,

of a debtor; but this is only done in a proper pending case. It certainly must be at the instance of some one who has a right to charge the property, and the statute does not mean to extend this remedy to every one who claims to be a common creditor. Equity must have jurisdiction, independent of the appointment of a receiver."

Finally it is argued that jurisdiction was acquired in this case by the consent of Thompson to the appointment of a receiver. But this contention was also made and rejected in Maxwell v. McDaniels; the court saying:

"An individual is not·a corporation. The administration of the affairs of an insolvent individual is not a recognized head of equity jurisdiction, as is the administration of the assets of an insolvent corporation. The subject-matter in the former case is not one over which the court has jurisdiction. Mere waiver by the defendant of objections otherwise fatal to the capacity of the plaintiff to invoke the jurisdiction in the case of a corporation removes the only obstacle to the granting of the relief desired., In the case of an individual defendant it leaves untouched the most serious difficulty of all, namely, that the subject-matter is not one within the province of the court.'"

Without citing further decisions or otherwise prolonging the discussion, we deem it sufficient to repeat our conviction that the appointment of a receiver and the granting of an injunction in this case were wholly without authority, and should be set aside. It follows that the order appealed from must be reversed, and the case remanded, with directions to dissolve the injunction, discharge the receiver, and vacate his appointment, and to dismiss the original and supplemental bills for want of jurisdiction.

Reversed.

2. PRINCIPAL AND AGENT ☞156—FALSE REPRESENTATIONS—LIABILITY OF PRINCIPAL.
    Defendant is liable for false representations by his agent from which he profited, though the fraud is not personal to him.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. ☞156.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes