MISSISSIPPI VALLEY TRUST CO. v. RAILWAY STEEL SPRING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1919.)

No. 5131.

1. INJUNCTION ☞157 — PRELIMINARY INJUNCTION — ORDER—IRREGULARITY—STATUTE AND EQUITY RULE.

In suit to marshal the assets of a railway company and distribute them, and for injunction restraining the company and others from interfering with, transferring, etc., any part of the railroad's assets, wherein receiver was appointed, order directing payment of interest by receiver on certain notes held by banks, and also enjoining such payees from selling or attempting to sell any collateral securing the notes, *held* irregular and invalid, as not conforming to Comp. St. § 1243a, or to new equity rule 73 (198 Fed. xxxix, 115 C. C. A. xxxix).

2. APPEAL AND ERROR ☞100(2)—ORDER DENYING PETITION TO VACATE INJUNCTION—JUDICIAL CODE.

Under Judicial Code, § 129 (Comp. St. § 1121), order denying petition to vacate a preliminary injunction was appealable.

3. INJUNCTION ☞163(1)—PRELIMINARY INJUNCTION—PETITION TO VACATE—DENIAL.

Order denying trust company's petition to dissolve preliminary injunction restraining it from disposing of collateral securing notes of railroad, whose assets a steel spring company was seeking to marshal and have distributed, a receiver having been appointed, *held* not necessarily erroneous, despite irregularities in the order to the receiver to pay interest on the notes, which order embodied the preliminary injunction.

4. INJUNCTION ☞175—PRELIMINARY INJUNCTION—APPLICATION FOR DISSOLUTION—PRACTICE.

It is well-recognized practice, on application for dissolution of restraining orders or preliminary injunctions on the ground of irregularities, to deny such petition if at the time of the hearing the court is of opinion such restraining order or preliminary injunction should issue, in view of all the facts and circumstances then existing.

5. CONTRACTS ☞101(1)—LOCAL LAW.

The validity of a transaction whereby a trust company became the holder of a railroad's bonds as security for the railroad's note, and the status of the trust company as such holder, are to be determined by the law of the state of Missouri; the transaction having been a Missouri transaction.

6. RECEIVERS ☞74—CONTROL OF PROPERTY—INTERFERENCE.

Property in the hands of a receiver appointed by a court may not be interfered with, even to carry out private agreements, contracts, or trusts.

7. RECEIVERS ☞77(1)—CONTROL OF PROPERTY BY COURT—JURISDICTION OF LIEN DISPUTES.

A court, administering property already in its hands through a receivership, may properly draw to itself all disputes as to liens and other rights upon or pertaining to such property.

8. RECEIVERS ☞77(4)—PROPERTY PLEDGED—INJUNCTION AGAINST SALE OF COLLATERAL—JURISDICTION.

In view of the controlling Missouri rule, District Court, on March 1, 1918, when it denied petition of trust company to vacate temporary injunction against its disposing of a railroad's bonds pledged as collateral to secure the note of the railroad, which was in the hands of a receiver for the marshaling of assets and their distribution at the suit of a steel spring company, *held* to have had jurisdiction to issue an injunctional or-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

der against the trust company, restraining it from the sale of the collateral, so that the order denying the petition to vacate the prior injunction was proper.

Appeal from the District Court of the United States for the Eastern District of Missouri; William C. Hook, Judge.

Petition by the Mississippi Valley Trust Company against the Railway Steel Spring Company and others, to vacate an order in the Steel Spring Company's suit against a railway for marshaling and distribution of assets. From an order denying the petition, petitioner appeals. Affirmed.

Loomis C. Johnson, of St. Louis, Mo. (J. D. Johnson, Breckenridge Jones, and A. H. Roudebush, all of St. Louis, Mo., on the brief), for appellant.

Joseph M. Bryson, of St. Louis, Mo., for appellee, Schaff.

C. S. Burg, of St. Louis, Mo., for appellee Missouri, K. & T. Ry. Co.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

BOOTH, District Judge. This is an appeal from an order, made after a hearing, denying a petition by the trust company to set aside a restraining, or injunctive, order, theretofore issued against it without a hearing. The salient facts are as follows:

September 27, 1915, two creditors' bills were filed in the court below against the Missouri, Kansas & Texas Railway Company. One of these bills was filed by the Railway Steel Spring Company. The bill prayed for a marshaling of the assets of the railway company and a distribution of the same, and also for an injunction against the railway company "and all persons, firms, and corporations whatsoever and wheresoever located, situated or domiciled, from interfering with, transferring, selling, or disposing of, attaching, levying upon, or in any manner whatsoever disturbing any part of the railroad's assets, moneys, and property now or hereafter in the possession of any receiver appointed in this cause." On the same day, answer was filed by the railway company admitting the allegations of the bill. A receiver was thereupon appointed to take possession and administer all of the properties and assets of the railway company. In the order appointing the receiver was the following provision:

"The Missouri, Kansas & Texas Railway Company and the officers, directors, agents, attorneys, and employés of said railway company, and all other persons claiming to act by virtue of or under said railway company, and all other persons, firms, and corporations whatsoever, and wheresoever situated, located, or domiciled, be and they are hereby restrained and enjoined from interfering with, attaching, levying upon, or in any manner whatsoever disturbing any portion of the assets, goods, moneys, and property and premises of which receiver is hereby appointed, or from taking possession of, or in any way interfering with, the same or any part thereof, or from interfering in any manner to prevent the discharge by said receiver of his duties or the operation of said property and premises under the orders of this court."

Among the mortgages upon property of the railway company was the consolidated mortgage, being, in general, a fourth lien upon the properties. Under this mortgage, bonds in the amount of $30,292,000

were outstanding; $24,516,000 of these were in the hands of the Central Trust Company, pledged to secure $19,000,000 of two-year gold notes of the railway company under a collateral trust agreement dated April 29, 1913. Of the bonds outstanding, but not thus pledged to the Central Trust Company, $250,000 of said bonds were held by the Mississippi Valley Trust Company to secure a note of the railway company, amount $125,000, due May 1, 1916; $800,000 held by the Mercantile Trust Company, to secure a note, amount $240,000; $250,000 held by the National Bank of Commerce, to secure a note, amount $125,000; $600,000 held by Speyer & Co., to secure a note, amount $243,750. The Mississippi Valley Trust Company also held $100,000 of the two-year gold notes above mentioned.

October 23, 1915, the receiver presented a petition to the court, setting forth among other things the facts above stated, and that the interest on the notes held by the Mississippi Valley Trust Company, Mercantile Trust Company, National Bank of Commerce, and Speyer & Co. would presently fall due. He also set forth in his petition that upon default upon maturity of said notes the holders might under the terms of their contracts sell the bonds held as security, and that in some one or more of the contracts it was provided that the appointment of a receiver, or insolvency, should immediately effect the maturity of said notes. Receiver prayed that he be allowed to pay the interest on the notes held by the four companies above mentioned, and further prayed that said four companies and each of them be enjoined until the further order of the court from selling or attempting to sell, or otherwise dispose of, any of the collateral respectively held by them.

Upon said petition the court made its order, October 23, 1915, directing the payment of interest on the notes held by the four companies above mentioned, and included in said order the following:

"The Central Trust Company of New York, as trustee in the collateral agreement dated April 29, 1913, and the National Bank of Commerce, of St. Louis, the Mercantile Trust Company, of St. Louis, the Mississippi Valley Trust Company, of St. Louis, and Speyer & Co., of New York, as payees and holders of the notes hereinabove referred to, be and each of them are hereby enjoined until the further order of this court from selling or attempting to sell, or otherwise dispose of, any of the collateral referred to in the above and foregoing petition and respectively held by them."

On the 1st of November, 1915, the receiver transmitted to the Mississippi Valley Trust Company the payment of interest on the note held by it, and stated in the letter of transmittal:

"This payment is made pursuant to order of the court dated October 23, 1915, a certified copy of which is herewith inclosed."

Attention was also called in the letter to the last clause of the order, enjoining the sale of the collateral.

March 31, 1917, Mississippi Valley Trust Company filed its petition to vacate the order of October 23, 1915. In its petition the trust company stated:

"Your petitioner, Mississippi Valley Trust Company, appearing herein only for the purpose of this motion and strictly limiting its appearance thereto, states: * * *

"(7) Your petitioner respectfully states that it had neither notice nor knowledge of the filing of the said petition of the said receiver on the 23d day of October, 1915; that it had neither notice nor knowledge of the hearing on said petition; that neither at the time of the entry of said order, nor for a long time thereafter, had it the power or the intention to sell the said bonds aforesaid; that, the premises considered, the said injunction or restraining order, having been made and entered without notice to your petitioner as aforesaid, was made and entered improvidently, in violation of the provisions of rule 73 of the Rules of Practice in Equity [198 Fed. xxxix, 115 C. C. A. xxxix] and further of section 718 of the Revised Statutes of the United States [Comp. St. § 1243a], and without jurisdiction in this court to make and enter the same; and that because thereof your petitioner unjustly and unlawfully is deprived of its rights and the power to assert the same."

The prayer of the petition was as follows:

"Wherefore, your petitioner prays that said order made and entered October 23, 1915, may be vacated and set aside, and by an order entered of record be declared to be void and of no effect."

After full hearing the court, on the 1st of March, 1918, filed the following order:

"Upon consideration of the petition of the Mississippi Valley Trust Company for the vacation of the order of October 23, 1915, restraining the sale of certain collateral, and of the briefs for the petitioner and the briefs and affidavits for the receiver and the railway company, it is ordered that the petition be and it is hereby denied."

The present appeal is from the last-named order.

Among the questions raised by the appeal are the following:

(1) Was the original order of October 23, 1915, irregular and invalid?

(2) If so, does the order of March 1, 1918, of necessity fall with the original order?

(3) Or was the order of March 1, 1918, valid and justified?

[1, 2] 1. It is plain from the record that the order of October 23, 1915, did not conform to the provisions of the Act of October 15, 1914, c. 323, § 17, 38 Stat. 737 (Comp. Stat. 1243a), or to new federal equity rule 73. Many irregularities are pointed out by counsel for appellant: Lack of notice of hearing to the appellant trust company; lack of opportunity to be heard; that the trust company was not a party to the suit in which the receiver had been appointed; that no bond was required; that the order did not define the injury, and state why it was irreparable; that no definite time was fixed for the continuance of the order.

Some of these objections proceed on the assumption that the order of October 23, 1915, was a restraining order; others, that it was a preliminary injunction. It has some of the features of both, and lacks some. But, whatever its precise nature, it failed in several particulars to conform to the statute and the rule above cited.

Without discussing at length its exact character, we shall assume that it was a preliminary injunction. The order of March 1, 1918, was therefore appealable. Section 129, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [Comp. St. § 1121]); Western Union Tel. Co. v. Trust Co., 221 Fed. 545, 137 C. C. A. 113; Davis v. Hayden, 238 Fed. 734, 151 C. C. A. 584. In view of the irregularities accom-

panying the issuance of said order of October 23, 1915, we are of opinion that, if timely and proper application had been made by the trust company for the vacation of said order, either the irregularities would have been cured, if curable, or the order would have been vacated.

[3, 4] 2. Was the order of March 1, 1918, necessarily erroneous, in view of the irregularities attending the order of October 23, 1915?

It is claimed by the appellees that the receiving of the interest by the trust company November 1, 1915, with notice that the interest was paid under and by virtue of the order of court which contained the injunctional order, a copy of which was inclosed to the trust company, and the retention by it of the interest so transmitted, was a waiver.

It is also contended by the appellees that the petition of the trust company filed March 31, 1917, and praying for the vacation of the order of October 23, 1915, is of such character that it waived any irregularities attending the last-mentioned order. The trust company stated in its petition that it entered an appearance solely for the purpose of the motion to vacate the order of October 23, 1915, yet it nevertheless proceeded to attack the validity of that order, not only for irregularities attending the making of the same, but also as to the merits, and it has followed the same course in this court upon appeal. It might well be held, under the circumstances, that the trust company had waived its right to object to the order of October 23, 1915, on the ground of irregularities. St. Louis & S. F. Ry. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Western Loan & Savings Co. v. Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Thames & Mersey Ins. Co. v. U. S., 237 U. S. 19, 24, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087. See, however, Salt Lake City v. Smith, 104 Fed. 457, 471, 43 C. C. A. 637; Southern Pac. Co. v. Fruit Co., 191 Fed. 101, 111 C. C. A. 581. However this may be, it seems certain that the trust company, by attacking the order of October 23, 1915, upon the merits, has at least opened the door to a discussion of the merits of an injunctional order, viewed not merely from the standpoint of facts existing on October 23, 1915, but viewed from the standpoint of facts as they appeared to the court at the time of the filing of the petition by the trust company, and at the time of the filing of the order denying said petition, viz. March 1, 1918.

It would be a useless procedure for the court to set aside the order of October 23, 1915, for irregularities, and at once issue a like order based upon the merits. It is a well-recognized practice, upon applications for dissolution of restraining orders or preliminary injunctions on the ground of irregularities, to deny such petition, if at the time of the hearing the court is of opinion that such restraining order or preliminary injunction should issue in view of all the facts and circumstances then existing. 22 Cyc. Law & Proc. 978; 1 Joyce on Injunctions, § 291a; Warren v. Pim, 65 N. J. Eq. 36, 55 Atl. 66; Savoie v. Thibodeaux, 28 La. Ann. 169; Henderson v. Maxwell, 22 La. Ann. 357.

We reach the conclusion, therefore, that the order of March 1, 1918, was not necessarily erroneous, although the order of Octo-

ber 23, 1915, would probably have been set aside for irregularity, if timely and proper application had been made.

[5-8] 3. This brings us to the consideration of the merits of the question, whether upon all the facts and circumstances existing on March 1, 1918, the court had jurisdiction to issue, and might properly issue, an injunctional order against the trust company, restraining it from the sale of the collateral in question.

The situation on March 1, 1918, had numerous features which were absent from the situation on October 23, 1915. The Central Trust Company on November 13, 1915, had filed its bill for foreclosure of the consolidated mortgage. The railway company had answered, asking that those parties who held consolidated bonds as collateral to notes should be enjoined from selling the collateral, and asking further that the holders of such bonds, including the Mississippi Valley Trust Company, be made parties to the consolidated foreclosure suit. In its answer the railway company had also raised the question as to the legal status of the consolidated bonds in the hands of those parties who held them as collateral to notes, including those held by the Mississippi Valley Trust Company. It was alleged that said bonds had never been sold by the railway company and had never passed out of its possession, except as they were placed in the hands of the several companies heretofore mentioned, as collateral security to the notes.

On December 22, 1916, the Central Trust Company had filed its bill to foreclose the collateral trust agreement of April 29, 1913. The railway company had answered, asking an injunction against the holders of the collateral bonds, and also asking specifically for a continuance of the order of October 23, 1915. On April 30, 1917, the Mercantile Trust Company, standing in substantially the same position as the Mississippi Valley Trust Company, filed its petition of intervention in the consolidated foreclosure suits, and asked for the adjudication of its rights. The notes had matured which were held by the Mississippi Valley Trust Company and by the other companies, and to which the bonds were being held as collateral. The receivership had been extended to the foreclosure suits.

Such were some of the additional facts to be taken into consideration by the court in determining, March 1, 1918, the question whether the Mississippi Valley Trust Company should be restrained from selling the collateral bonds held by it. And the court also had to consider and determine the question of the status of the Mississippi Valley Trust Company as holder of the bonds in question. These questions were and are vital questions in the case. If the status of the trust company as holder of these bonds was such on March 1, 1918, in view of all the facts and circumstances then existing, that the court upon an application then made would have had jurisdiction, and been justified in issuing an injunctive order against the sale of said collateral, then the order of March 1, 1918, should be sustained; otherwise, not.

The validity of the transaction by which the trust company became the holder of the bonds in question as security for the note which it held of the railway company, and the status of the trust company as such holder, are to be determined by the local law, that is, of the state

of Missouri, inasmuch as the transaction was a Missouri transaction. (The note and contract of pledge appear in margin.[1]) Hiscock v. Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945; Taney, Trustee, v. Bank, 232 U. S. 174, 180, 34 Sup. Ct. 288, 58 L. Ed. 558; Dale v. Pattison, 234 U. S. 399, 404, 34 Sup. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. (N. S.) 754; Fourth St. Bank v. Trustee Millbourne Mills Co., 172 Fed. 177, 187, 96 C. C. A. 629, 30 L. R. A. (N. S.) 552; First Nat. Bank v. Lanz, 202 Fed. 117, 119, 120 C. C. A. 271; Dibert v. Wernicke, 214 Fed. 673, 131 C. C. A. 109.

[1] $125,000.00                                        St. Louis, Mo., May 1st, 1915.

May 1st, 1916, after date, we promise to pay to the order of Mississippi Valley Trust Company, one hundred twenty-five thousand dollars, for value received, at Mississippi Valley Trust Company, at St. Louis, Mo., with interest at the rate of six per cent. per annum from date, interest payable semiannually.                          Missouri, Kansas & Texas Railway Company,
                                              C. N. Whitehead, Vice-President.

F. Johnson, General Treasurer.

Having executed our note as above, and being desirous of securing the same, as well as all other debts and liabilities for which we are now bound or may become bound to said Mississippi Valley Trust Company, of St. Louis, Mo., we do hereby pledge to said trust company, as collateral security for the payment of this note as well as for the payment of all other debts and liabilities for which we are now bound or may become bound to said trust company, the following described property, to wit:

Two hundred fifty thousand dollars ($250,000), face amount, consolidated mortgage five per cent. thirty-year gold bonds, series A, of Missouri, Kansas & Texas Railway Company in temporary form Nos. 407 to 516 inclusive, 659, 660, and 664 to 666, inclusive, for $10,000 each, of which we are in good faith the owners, the same being fully paid for and free from liens or claims of any kind whatever, and agree to give additional security whenever the market value of the above collateral should decline and on notification of said Mississippi Valley Trust Co., by any of its officers to us. In default of payment of said note at maturity, or the payment of any such other obligations, or in default of our giving such additional security, when so notified within twenty-four hours after such notice, we hereby authorize said Mississippi Valley Trust Co., or any one of its officers, or agents, to sell said collateral at public or private sale, or otherwise, at its option, without notice, and to apply the proceeds to the payment of said note, with all damages, interest, charges and costs and such other debts and liabilities; and in case the proceeds of such sale are not sufficient to cover the amount of said note as well as such other obligations, we agree to pay the balance thereof on demand, and in case there is any surplus left from such sale, such surplus shall be applied by said Mississippi Valley Trust Co., to the payment of any other debt or liability for which we are now bound or may become bound to said Mississippi Valley Trust Co.

Said Mississippi Valley Trust Co. shall also have the right, at any such sale, to bid for and purchase the said pledged property or any part thereof, in its own name, and for its own use and benefit.

Said Mississippi Valley Trust Co. is also authorized to use, transfer, or hypothecate said collateral, at its option, it being required on the payment of said note and all other debts and liabilities for which we are now bound or may become bound to said Mississippi Valley Trust Co., at any time before sale has been made of said collateral, to surrender same; and in case of any exchange of or additions to the collateral above specified, the powers and rights above granted shall extend to such additional or new collateral.

Notice sent to our place of abode or business shall constitute legal notice for additional security.            Missouri, Kansas & Texas Railway Company,
                                              C. N. Whitehead, Vice-President.

F. N. Johnson, General Treasurer.

It is necessary, therefore, to inquire whether the courts of Missouri have passed upon the questions involved. In case of Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1116, where unissued corporate bonds, secured by mortgage on the corporate property, had been put up as collateral to the corporation's notes, under a contract very similar in terms to the contract in the case at bar, the court in its opinion said:

"Considering them (the collateral bonds) in the light of a mere additional promise of the maker of the notes to pay money, they cannot, from the very nature of the transaction, be considered as collateral security for the debt, for this would lead to the absurd result that one might make his promissory note for $1 with a collateral note for $2, so that, if he should be unable or fail to pay. the sale of the collateral would have simply the effect to double the amount of his indebtedness, without affording any additional security for the debt, other than a penalty for its nonpayment. Should he, however, secure the second note by mortgage upon property, a different proposition would be presented. Under such circumstances the note and mortgage may be treated as collateral to the indebtedness so far as is necessary to give the creditor in the first note the benefit, with respect to his indebtedness, of the lien upon the mortgaged property, nominally created as security for the collateral note. * * * "

Again:

" * * * As between the pledgor and pledgee, and those having notice of the character of the transaction, its only effect is to give the pledgee the benefit of the lien of the mortgage for the collection of his own debt. The amount of the mortgage obligations that he may have as collateral is only important in determining the extent to which his own debt may participate in the proceeds of the mortgage securities."

And again:

" * * * In so far as these bonds constitute a personal liability of the Hardwood Export Company they have no force whatever, otherwise than as an evidence of the pledge of an interest in the lands mortgaged to secure them. The pledgee becomes the holder of them for the purpose of enforcing his lien by the foreclosure of the mortgage. This lien constitutes the pledge and is collateral to the principal debt in the same sense as if it were a horse or the note of a third party or any other article of personal property."

It was further held that the holder of the collateral bonds held them as a trustee, and was subject to all the duties and liabilities of a trustee in acting with reference to said collateral bonds. This holding of the Missouri court is controlling here, and, though it is opposed to the views of a number of other courts, yet it is not without support of high authority. In re Waddell Entz Co., 67 Conn. 324, 327, 35 Atl. 257; Jno. Matthews v. Knickerbocker Trust Co., 192 Fed. 557, 113 C. C. A. 29; Third Nat. Bank v. Railroad, 122 Mass. 240.

The case of Wade v. Railroad, 149 U. S. 327, 13 Sup. Ct. 892, 37 L. Ed. 755, is not opposed. What that case held was that—

"Negotiable securities once put in circulation for value may be transferred for less than their face, but the maker and those claiming under him cannot limit the right of a subsequent holder to a recovery of what he may have paid therefor."

In the case at bar the bonds had not been "put in circulation for value."

258 F.—23

It is true, as claimed by counsel for appellant, that the collateral bonds in question cannot properly be considered either as assets of the railway company or as property of the railway company, within the meaning of those terms as used in the order appointing the receiver; and, from this, counsel draw the conclusion that when the trust company takes steps to realize upon the collateral bonds it is not interfering with any assets or property of the railway company. The argument is not entirely sound. The bonds have a twofold character and purpose: When properly sold by the railway company they become evidence of a debt owed by the railway company to the amount indicated by the face of the bonds; second, they are evidence that the holder of the bonds has a right to share in the proceeds of the security covered by the mortgage accompanying the bonds. The trust company, in taking these bonds as collateral, did not acquire any right in them whatever as evidence of a debt owed by the railway company. They evidenced no debt, for they had not been sold. But it did acquire an interest in the bonds as evidence of a right on the part of the holder to participate in the mortgage security. The debt owed by the railway company to the trust company was evidenced by the note in the hands of the trust company, and by that alone. The property covered by the consolidated mortgage was made the security for that note by the pledging of the bonds, and the extent to which the trust company might participate in the proceeds of that mortgaged property was determined by the amount of the bonds so held as collateral, limited, however, by the amount of the note itself. Any attempt on the part of the trust company to sell the bonds as evidencing a debt of the railway company might very possibly result in increasing the outstanding indebtedness of the railway company. This would diminish pro rata the value of each existing creditor's right to participate in the assets of the railway company, and would be in substance and effect an interference with those assets. Those assets were the res in the hands of the court. There was no necessity for the trust company to take steps to foreclose the mortgage secured by the bonds, because such foreclosure suit was already pending; and if the bonds were also collateral to the two-year secured gold notes, the same is true, because a suit to foreclose the collateral trust agreement was also pending.

This is not a case of attempting to force the holder of a lien to come into court by summary proceeding and have the validity of such lien determined. Such were the cases of Andrews v. Paschen, 67 Wis. 413, 30 N. W. 712; American, etc., Bank v. Ruppe, 237 Fed. 581, 150 C. C. A. 463; In re Rathman, 183 Fed. 913, 106 C. C. A. 253, and the cases therein exhaustively reviewed. Nor is it a case of interfering by summary proceeding with the possession of specific personal property held by a pledgee or other party claiming adverse rights. Such were the cases of Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; Marshall v. Knox, 83 U. S. (16 Wall.) 551, 21 L. Ed. 481; Wheaton v. Teleg. Co., 124 Fed. 61, 59 C. C. A. 427; Horn v. Railway (C. C.) 151 Fed. 626; Bd. of Educa-

tion v. Leary, 236 Fed. 521, 149 C. C. A. 573. But it is a case that comes within well-established principles.

Property in the hands of a receiver appointed by a court may not be interfered with, even to carry out private agreements, contracts or trusts. Wiswall v. Sampson, 14 How. 52, 66, 14 L. Ed. 322; In re Tyler, 149 U. S. 164, 181, 13 Sup. Ct. 785, 37 L. Ed. 689; Hitz v. Jenks, 185 U. S. 155, 22 Sup. Ct. 598, 46 L. Ed. 851; High on Receivers (4th Ed.) §§ 136, 138, 140. Furthermore a court which is administering property already in its hands through a receivership may properly draw to itself all disputes as to liens and other rights upon or pertaining to such property. Morgan's Co. v. Railway, 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 626; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; Farmers' Loan & Trust Co. v. Railway, 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Wabash Ry. Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379; Central Trust Co. v. Railway (C. C.) 57 Fed. 3; Toledo, etc., Ry. Co. v. Trust Co., 95 Fed. 497, 36 C. C. A. 155.

This is a case where the court, through its receiver, having taken possession and control of the properties of the railway company, saw the trust company in possession of certain bonds of the railway company, by the sale of which the res in the hands of the court might be interfered with. The court further saw that those bonds did not evidence any debt owed by the railway company, but that the trust company had a valid interest in the bonds only as evidence of its right to participate in the mortgage security to the extent of a certain note held by it; under these circumstances in order to prevent sale of the bonds which might wrongfully increase the claims against the property in the hands of the receiver, to the detriment of other creditors, the court in its discretion concluded that the trust company should be enjoined from making such sale, without, however, denying or interfering with the right of the trust company to participate in the security under the mortgage.

The court was justified in its conclusion, and the order appealed from is affirmed.