## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

## ROBERTS et al. v. CITY OF NEW YORK.
### No. ——.

Circuit Court of Appeals, Second Circuit.
June 20, 1938.

Hughes, Richards, Hubbard & Ewing, of New York City (Allen S. Hubbard, of New York City, of counsel), for William Roberts, as receiver of Manhattan Ry. Co.

Davies, Auerbach & Cornell, of New York City (H. C. McCollom and Orrin G. Judd, both of New York City, of counsel), for Central Hanover Bank & Trust Co., as trustee.

William C. Chanler, Corp. Counsel, of New York City (William G. Mulligan, Jr., and Leo Brown, both of New York City, of counsel), for City of New York.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

A receiver in equity has been appointed and is now administering the property of the Manhattan Railway Company. The receiver, the trustees under its first and second mortgages and a committee of unmodified stockholders appeal from an order which denied a stay of the proposed sale of tax liens on the receivership property. The City of New York, where the property is located, has advertised the tax liens for sale on June 30th next. The railway lines have been operated by the Interborough Rapid Transit Company under lease since January, 1903 by the terms of which the lessee was to pay the taxes. The Interborough Rapid Transit Company has been in receivership since August 26, 1932 and the Manhattan Railway Company since September 6, 1932.

There has been a default in the payment of taxes to the City of New York since October 1, 1933 and the amount now overdue with interest approximates nine million dollars. Under the New York City Charter and Administrative Code (Laws of New York, 1937, Ex.Sess., ch. 929, § 415 (1)—10.0, the City may take no action to enforce the collection of taxes until some taxes have been overdue for three years or more. At such time the City Collector, at the City Treasurer's direction, may advertise for three months consecutively that the tax liens will be sold at public auction. At the close of such statutory advertisement,

the City Collector may sell the liens at public auction and the successful bidder receives a document called a "transfer of tax lien". The transfer of tax lien entitles the purchaser to receive interest until maturity at the rate, not exceeding 12%, which he sets forth in his bid. The successful bidder is the one who agrees to accept from the tax debtor the lowest rate of interest. If there are no bidders, the City may become the purchaser without paying anything therefor. The transfer of tax liens matures at the end of three years from the date it bears. If unpaid at maturity, it may be foreclosed. If the tax debtor fails to pay current interest or current taxes at any time within the three years, the maturity of the lien is accelerated by his default at the option of the lien holder. Laws of 1937, Ex.Sess., ch. 929, § 415 (1)—23.0 to § 415 (1)—42.0. The right of the City to advertise for sale the tax liens accrued in November, 1936, when three years of taxes became in arrears. On March 29, 1938 the advertising commenced. It was undertaken without application by the City to the District Court for that Court's consent.

The appellants maintain that such consent was a condition precedent to the sale of the tax lien and, not having been obtained, they argue that the stay should be granted and the order below reversed. Their position is grounded on the contention that to permit the proposed sale would increase the burden of the tax in that the rate of interest may be increased in the bid to as high as 12% whereas the present rate to the City is only 7%. The argument therefore is that the sale will amount to an interference with the assets of the receivership estate or its administration. In re Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689, Board of Directors v. Kurn, 8 Cir., 91 F.2d 118, and In re Argyle Corporation, 7 Cir., 78 F.2d 491 are cited. In the Argyle Case, the bankruptcy court enjoined the State of Illinois from proceeding in the state court to acquire title to property of the estate. In Board of Directors v. Kurn, suits were brought to actually collect the taxes out of the property. An injunction against the maintenance of these suits in the state court was granted. In Re Tyler, the property in receivership was seized and levied upon. In Dayton v. Stanard, 241 U.S. 588, 36 S. Ct. 695, 60 L.Ed. 1190, property in the custody of the bankruptcy court was sold for taxes. The court held the sale void because leave of the court had not first been obtained. These cases differ materially from the one at bar. Here there will be no sale of the property under the tax lien until permission is obtained from the court in administration of the receivership. All that the City seeks to do is sell the liens without disturbing the property itself.

In Mississippi Valley Trust Co. v. Railway Steel Co., 8 Cir., 258 F. 346, the railroad had issued its note to the Mississippi Trust Co. for $125,000 giving as collateral security $250,000 of its own mortgage bonds. The Trust Company attempted to sell the bonds after the railroad was placed in receivership and was enjoined from doing so. The court held that to allow the sale of the pledged bonds would mean increasing the claims against the estate in receivership; that is to say, the creditor was owed $125,000 by the estate but if it sold the pledged bonds they would immediately become, in the hands of the purchaser, claims against the estate for $250,000, thereby cutting down the assets of the receivership applicable to the other creditors' claims. It was considered that the sale of the bonds pledged as collateral would result in an interference with the assets of the receivership and their administration. The bonds were issued by the railroad itself, were not bonds of a third party and therefore could not have been assets of the estate as the court pointed out. This authority tends to support the claim that leave to sell must first be obtained where there will be a certain and substantial increase made in the obligations of the estate.

In the instant case, however, there is no certainty that the obligations of the estate will be increased since the interest bid may be lower instead of higher than it is at present. Such a speculative conjecture as that urged by appellants will not justify enjoining the City.

To sell the tax lien did not require permission of the court below. The local law may properly fix interest upon taxes in default. The only occasion for asking permission of the court to sell is a threatened sale of property in custodia legis or other interference with the court's jurisdiction which is administering such property. There was, therefore, no abuse of discretion, considering the long overdue and large sum of taxes. During these years the bondholders' trustee received and paid

to the bondholders full interest and did not meet the tax obligations.

Since the facts are undisputed and this single question only is presented, the motion for a stay will be denied and the motion to affirm the order granted because no substantial question is presented on the appeal.

Order affirmed.